## A02A1948. JACKSON v. THE STATE.
### (575 SE2d 713)

BLACKBURN, Chief Judge.

Following a jury trial, Joseph Jackson appeals his conviction for hit and run, homicide by vehicle in the first degree, homicide by vehicle in the second degree, and reckless driving. On appeal, Jackson contends that: (1) the evidence was insufficient to support the verdict; and the trial court erred by (2) denying his motion to suppress certain evidence related to his car because the search and seizure thereof violated his Fourth Amendment rights; (3) denying his motion to exclude all evidence related to the car because it was not available for independent testing at the time of trial; (4) allowing the State to shift the burden of proof during closing arguments; (5) improperly instructing the jury in several respects; and (6) providing the jury with a prejudicially formatted jury form. For the reasons set forth below, we affirm.

1. Arguing that the trial court erred by denying his motion for a directed verdict, Jackson challenges the sufficiency of the evidence against him.

> On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Jackson] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The standard for reviewing a denial of a motion for a directed verdict of acquittal is whether under the rule of *Jackson v. Virginia*,[1] the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. Moreover, the test established in *Jackson* is the proper test for us to use when the sufficiency of the evidence is challenged, whether the challenge arises from the overruling of a motion for directed verdict or the overruling of a motion for new trial based upon alleged insufficiency of the evidence.

(Citations and punctuation omitted.) *Lester v. State.*[2]

---

[1] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[2] *Lester v. State,* 226 Ga. App. 373, 376 (2) (487 SE2d 25) (1997).

Viewed in this light, the record shows that, at approximately 4:15 p.m. on February 13, 2000, Barbara Wells and Delana Stuart were driving behind a burgundy Ford Mustang on Redan Road. As Wells and Stuart watched, the Mustang drifted off the road and struck Willie Jones, who was walking along the shoulder of the road. Following the collision, the Mustang did not slow down, and Wells and Stuart followed it long enough to write down the tag number. Neither Wells nor Stuart saw the face of the person driving the Mustang. Wells and Stuart then returned to the scene where they assisted police in finding Jones, who had died from his injuries. Broken glass from the passenger side mirror of the car which struck Jones was found by the road.

The police traced the tag number given to them by Wells and Stuart to a Cadillac owned by Jackson. The following day, Detective Toney went to Jackson's home, and, from a vantage point on a public street, Detective Toney observed a burgundy Mustang parked in Jackson's driveway with the reported license plate on it. Detective Toney also noticed that the windshield had been cracked and both the passenger side of the car and the passenger side mirror had been damaged.

At that point, Detective Toney decided to inspect the car closer, and, walking onto the driveway, he discovered a fabric imprint on the Mustang's hood which could have been consistent with the clothes worn by Jones. Detective Toney then knocked on Jackson's door, and, after he discovered that no one was home, he impounded the Mustang.

Andrew Hammond, a friend of Jackson's, testified that Jackson came to visit him at approximately 4:00 p.m. on the date of the accident and stayed about 15 minutes. Hammond stated that, at the time, Jackson was driving the burgundy Mustang. The evidence also showed that Hammond's home was in close proximity to the scene of the hit and run.

This evidence was sufficient to support the verdict. See *Jackson*, supra. And Jackson's testimony that he was not driving the Mustang on the day in question does not alter this result because the jury had the right to reject his testimony as lacking credibility. See *Lester*, supra.

2. Jackson contends that the trial court erred by rejecting his motion to suppress evidence relating to the Mustang on constitutional grounds, contending: (a) that Detective Toney improperly entered the curtilage of his home without a warrant and (b) Detective Toney improperly impounded the Mustang without a warrant.

When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate

court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations, punctuation and emphasis omitted.) *Tate v. State.*[3]

(a) Jackson contends that Detective Toney inappropriately trespassed onto the curtilage of his home in order to get a look at the Mustang. The record reveals, however, that Detective Toney initially inspected the Mustang from a vantage point on the public sidewalk. From there, he was able to discern that the Mustang's tag matched the one he was looking for, and he could see that the passenger side of the Mustang had been damaged. Accordingly, Detective Toney developed probable cause to search Jackson's car from a public vantage point before he entered Jackson's curtilage for a closer inspection.

The Fourth Amendment . . . has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares. Nor does the mere fact that an individual has taken measures to restrict some views of his activities preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible.

*California v. Ciraolo.*[4]

Prior to stepping onto the curtilage of Jackson's home, Detective Toney clearly saw the automobile exactly matching the description of the one that had hit and killed Jones. In short, the murder weapon was in plain view at that point, and, as such, Detective Toney had probable cause to search the Mustang and did not violate the Fourth Amendment by stepping onto Jackson's driveway to investigate further.

---

[3] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).
[4] *California v. Ciraolo*, 476 U. S. 207, 213 (106 SC 1809, 90 LE2d 210) (1986).

(b) Furthermore, Jackson's Fourth Amendment rights were not violated because Detective Toney seized and impounded the Mustang prior to getting a warrant. Detective Toney "had probable cause to seize the automobile as an instrumentality of the crime. . . . Moreover, . . . [Detective Toney] had no way of determining who might have access to the vehicle and could remove and destroy the evidence." *Collins v. State.*[5] Moreover, the car was in plain view. Under these circumstances, Detective Toney did not violate Jackson's Fourth Amendment rights by seizing the Mustang prior to getting a warrant. Id.

3. Jackson contends that the trial court erred by denying his motion to exclude all evidence relating to the burgundy Mustang because it was not available for testing at the time of trial. Specifically, Jackson contends that the State improperly destroyed evidence by selling the Mustang prior to trial, thereby violating his due process rights.

The record shows that, after the Mustang had been seized, several tests were performed on it. These tests revealed: (1) no usable latent fingerprints; (2) no blood or tissue samples; (3) some paint scrapings from the car matched paint found on Jones' clothing; and (4) broken glass found at the scene matched the glass remaining in the Mustang's passenger mirror.

After these tests had been completed, the Mustang was returned to the impound lot, and Jackson was notified that he could have the Mustang picked up at that time. Detective Toney personally called Jackson's family to let them know that the car was available. Jackson never claimed the car, however, and it was subsequently sold at auction to a salvage yard. As such, it was not available at the time of trial.

Because of this unavailability, the trial court decided to exclude the tests performed by the State because Jackson had not accessed the car in order to attempt to refute the inculpatory results. The trial court did, however, allow Detective Toney to testify regarding the condition of the car, and it also allowed pictures of the car into evidence. Jackson now contends that the trial court should have excluded all evidence of the vehicle, arguing that the State retained control of the vehicle at all times and, ultimately, destroyed the evidence so that he could not independently test it. We disagree.

In dealing with the failure of the state to preserve evidence which might have exonerated the defendant, a court must determine both whether the evidence was material

---

[5] *Collins v. State*, 171 Ga. App. 906, 910 (2) (321 SE2d 757) (1984).

and whether the police acted in bad faith in failing to preserve the evidence. *Arizona v. Youngblood*.[6] To meet the standard of constitutional materiality, the evidence must possess an exculpatory value that was apparent before it was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *California v. Trombetta*.[7]

*Walker v. State*.[8]

As an initial matter, the evidence does not support Jackson's contention that he had no opportunity to gain access to the Mustang after it was impounded. To the contrary, the record shows that, after it was tested, the Mustang was offered back to Jackson and he simply failed to claim it. As such, his due process claim in this matter is immediately suspect. Moreover, Jackson has provided this Court with no evidence that the State acted in bad faith by releasing his car. Even if we were to assume that the State's "handling of the automobile [indicated] careless, shoddy and unprofessional investigatory procedures, [it did] not indicate that the police in bad faith attempted to deny [Jackson] access to evidence that they knew would be exculpatory." *Walker*, supra at 681 (3).

Under these circumstances, we cannot say that the trial court erred by allowing Detective Toney to testify regarding the condition of the car as he found it. Likewise, it was not error to introduce photographs taken of the car. *Walker*, supra.

4. Jackson contends that the trial court erred by allowing the State to shift the burden of proof during closing arguments. We disagree.

During its initial closing, the State posed three questions to the jury regarding inconsistencies in the State's and the defendant's cases, challenging defendant's counsel to provide a viable explanation for these inconsistencies. When the State initially posed these questions for the jury, Jackson made no objection. In fact, Jackson made no objection until the State finished its closing after Jackson closed. At that time, the State reiterated its questions, Jackson objected, and the trial court overruled the objection. Sua sponte, the trial court then instructed the jury: "Ladies and gentlemen, what is said in closing argument is not evidence. It's a contention as to what the evidence has been and the attorneys' comments in that regard."

Following the conclusion of all testimony, Jackson renewed his objection, arguing that the State's remarks to the jury in which it

---

[6] *Arizona v. Youngblood*, 488 U. S. 51 (109 SC 333, 102 LE2d 281) (1988).
[7] *California v. Trombetta*, 467 U. S. 479 (104 SC 2528, 81 LE2d 413) (1984).
[8] *Walker v. State*, 264 Ga. 676, 680 (3) (449 SE2d 845) (1994).

asked them to make Jackson's counsel explain the inconsistencies in the evidence shifted the burden of proof. The trial court responded that it had admonished the jury that closing arguments were not evidence, and Jackson made no further objection. The following day, Jackson's counsel made a motion for a mistrial.

As an initial matter, Jackson has waived his right to raise this argument on appeal. He did not contemporaneously object to the questions in issue when they were originally made, see *Butler v. State*,[9] and he failed to object to the trial court's curative instructions at any time, thereby acquiescing in them. In addition, Jackson's motion for mistrial was clearly untimely, as it was not even made on the same day that the closing argument took place. See *Ford v. State*.[10]

Even if Jackson had preserved his argument on this issue, it would still fail. In *Ward v. State*,[11] our Supreme Court held that a "prosecutor's exhortation to make [the defense] explain why the state's evidence did not amount to proof beyond a reasonable doubt was not an attempt impermissibly to shift the burden of proof to the defendant." (Punctuation omitted.) Likewise, in this case, the State did not shift the burden of proof by encouraging the jury to require the defense to explain inconsistencies in the evidence.

5. Jackson contends that the trial court improperly instructed the jury by: (a) defining "malice aforethought"; (b) denying the defense's request to charge on mere presence; and (c) denying the defense's request to charge regarding the control of the Mustang by other persons.

As an initial matter, "[i]t is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error." *Williams v. State*.[12] In addition,

[i]t has long been the rule in this state that a request to charge must be correct, even perfect, and that it must also be legal, apt, precisely adjusted to some principle involved in the case and be authorized by the evidence. Furthermore, it is never error to refuse to charge on an issue which is not adjusted to the evidence.

(Punctuation and footnote omitted.) *Brown v. State*.[13]

---

[9] *Butler v. State*, 273 Ga. 380 (541 SE2d 653) (2001).
[10] *Ford v. State*, 269 Ga. 139, 141 (3) (498 SE2d 58) (1998).
[11] *Ward v. State*, 262 Ga. 293, 296 (6) (a) (417 SE2d 130) (1992).
[12] *Williams v. State*, 249 Ga. 822, 825 (3) (295 SE2d 293) (1982).
[13] *Brown v. State*, 246 Ga. App. 517, 523 (10) (541 SE2d 112) (2000).

(a) Jackson contends that the trial court erred by defining the term "malice aforethought" to the jury. OCGA § 40-6-393 (a) states: "Any person who, without malice aforethought, causes the death of another person through the violation of subsection (a) of Code Section 40-6-163 or subsection (b) of Code Section 40-6-270 or Code Section 40-6-390 or 40-6-391 or subsection (a) of Code Section 40-6-395 commits the offense of homicide by vehicle in the first degree." As the explicit statutory definition of one of the crimes for which Jackson was charged contains the term "malice aforethought," the trial court did not err by instructing the jury on that term's meaning.

(b) Jackson contends that the trial court erred by denying his written request to charge the jury on mere presence. The evidence, however, did not support the charge. Hammond, Jackson's friend, indicated that Jackson was driving the car alone on the date in question, and Jackson testified that he was not in possession of the car at all. As such, the requested charge was not adjusted to the evidence, and the trial court did not err in refusing to give it. "A requested charge needs to be given only where it embraces a correct and complete principle of law adjusted to the facts and which is not otherwise included in the general instructions given." (Punctuation omitted.) *Holmes v. State*.[14]

(c) Jackson contends that the trial court erred by denying his request to charge on the doctrine of equal access. Again, this charge was not adjusted to the facts adduced at trial. The State provided evidence that Jackson was driving the car at the time of the hit and run, and the defense argues that Jackson was not in possession of the car. The trial court did not err. *Holmes*, supra.

6. Finally, Jackson contends that the trial court erred by submitting a prejudicially formatted verdict form to the jury. Specifically, Jackson argues that the "guilty" option was improperly listed before the "not guilty" option.

> [T]he use of a jury verdict form preprinted with the words "Guilty" and "Not Guilty" does not constitute error unless the form would mislead jurors of reasonable understanding, or the trial court erroneously instructed the jury on the presumption of innocence, the State's burden of proof, the possible verdicts that could be returned, or how the verdict should be entered on the printed form. In and of itself, merely listing the possible guilty verdict option(s) before the

---

[14] *Holmes v. State*, 210 Ga. App. 118, 119 (2) (435 SE2d 492) (1993).

"Not Guilty" option does not render the verdict form misleading so as to constitute reversible error.

*Rucker v. State.*[15]
   *Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED DECEMBER 11, 2002

Margaret A. Vosburg, Douglas B. Ammar, for appellant.
J. Tom Morgan, District Attorney, Jeanne M. Canavan, Joseph N. Walden III, Assistant District Attorneys, for appellee.

---

[15] *Rucker v. State*, 270 Ga. 431, 435 (5) (510 SE2d 816) (1999).