### A03A0769. WATSON v. THE STATE.
(583 SE2d 228)

RUFFIN, Presiding Judge.

A Clayton County jury found Latitisha Katrice Watson guilty of affray. She appeals, challenging the sufficiency of the evidence, the trial court's jury instructions, and the racial composition of the jury array. For reasons that follow, we affirm.

1. In several enumerations of error, Watson argues that the evidence was insufficient to sustain her conviction and that the trial court should have directed a verdict of acquittal. The standard for reviewing the denial of a motion for directed verdict is the same as that for reviewing the sufficiency of the evidence:

> we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond

---

a reasonable doubt. Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve.[1]

Viewed in this manner, the record shows that, on June 10, 2000, LaShandra Colvin and her roommate arrived home to find several cars on their lawn. They determined that the cars belonged to guests of Watson, their next-door neighbor, and asked that the cars be removed. According to Colvin, Watson's roommate, Janese Britford, assured her that the cars would be moved, and Colvin began walking to her house. At that point, Watson, who was standing on her front walkway, began shouting "unpleasant words" at Colvin, who shouted back at Watson. As the two women yelled at each other, Watson ran across the yard toward Colvin, and Colvin responded by running at Watson.

When they met, Colvin pushed Watson against a car. The two fell to the ground and scuffled for several minutes until they were separated by onlookers. The various parties then returned to their respective homes. Some time later, the police arrived to investigate the fight. Colvin testified that she was arrested and subsequently convicted of affray.

Colvin's roommate offered similar testimony regarding the fight, noting that Watson initially ran toward Colvin and that, as they met, the two began "throwing blows." Watson, on the other hand, testified and described Colvin as the aggressor. According to Watson, Colvin began cursing at her and then attacked her. Watson then started "swinging to defend [herself]." Watson's cousin, who witnessed the fight, also testified that Colvin "went after" Watson.

The responding officer testified about statements he received from the various parties. Colvin told him that Watson "jumped at" her roommate, and she responded by "jump[ing] at" Watson. Colvin also stated that, after the initial encounter, the fighting was "mutual." In contrast, Watson indicated that Colvin made the first aggressive move. The officer further testified that, when he arrived, he had to separate Colvin, Watson, and the others because they "began yelling and screaming; started, basically, coming towards each . . . other [and] it was mutual." According to the officer, "anytime [the parties] saw each other, they immediately started a verbal exchange."

On appeal, Watson argues that the evidence supports only one of two conclusions — that she attacked Colvin, who responded in self-defense, or that Colvin attacked her, and she acted in self-defense.

---

[1] *Wallace v. State*, 253 Ga. App. 220 (1) (558 SE2d 773) (2002).

She further notes that, in *Hawkins v. State*,[2] our Supreme Court held that "where the evidence shows that one of the parties acted entirely in self-defense, while the other assaulted and beat him, the aggressor may be guilty of an assault and battery, but neither of them guilty of an affray."[3] In Watson's view, neither she nor Colvin is guilty of affray because the evidence necessarily shows that one of them acted in self-defense.

We disagree. "An affray is the fighting by two or more persons in some public place to the disturbance of the public tranquility."[4] Participants in the affray must intend to fight; unwilling participants, or those acting solely in self-defense, lack the necessary intent.[5] Whether the participants intended to fight, however, is a question for the factfinder, and "intent may be inferred from the acts and conduct of the parties, as well as the circumstances before, during, and after the commission of the crime."[6]

Despite Watson's claims, the jury was not required to conclude that either she or Colvin acted entirely in self-defense.[7] Given the evidence presented, including that Colvin and Watson engaged in a verbal exchange before and after the physical altercation, the jury could reasonably determine that both intended to fight and find Watson guilty of affray.[8]

2. Watson contends that the trial court erred in refusing to give two requested jury instructions. We find no error.

(a) Watson first claims that the trial court erroneously failed to give her requested charge on self-defense. But we have not been able to find her written request in the record, and Watson has provided no record citation for the request. As a result, this claim of error presents nothing for us to review.[9]

Furthermore, the record reveals that the trial court fully charged the jury on self-defense, using relevant language from OCGA § 16-3-21 (a). "It is not error to refuse to charge in the exact

---

[2] 13 Ga. 322, 324 (1) (1853).

[3] See also *Drake v. State*, 159 Ga. App. 606, 607 (2) (284 SE2d 109) (1981) (citing *Hawkins*).

[4] OCGA § 16-11-32 (a).

[5] See *Johnson v. State*, 135 Ga. App. 360-361 (2), 362 (4) (217 SE2d 618) (1975); see also *Hawkins*, supra; *Drake*, supra.

[6] *O'Connor v. State*, 255 Ga. App. 893, 894 (1) (567 SE2d 29) (2002).

[7] See *Pendergrass v. State*, 199 Ga. App. 467-468 (405 SE2d 297) (1991); see also *Roberts v. State*, 215 Ga. App. 881, 882 (452 SE2d 570) (1994) (in mutual combat cases, "[s]uch combat sufficiently appears where it is shown that there was a mutual intent by the accused and another to fight, and one or more shots were fired. It makes no difference who fires the first shot, nor is it necessary that both parties shoot.") (punctuation omitted).

[8] See *O'Connor*, supra; *In the Interest of N. T. S.*, 242 Ga. App. 109, 110-111 (1) (528 SE2d 876) (2000); see also *Pendergrass*, supra.

[9] See *Mitchell v. State*, 255 Ga. App. 585, 591 (6) (565 SE2d 889) (2002).

language requested when the legal principle at issue is substantially covered in the charge given."[10] Thus, the trial court did not err in refusing to give Watson's charge.

(b) Watson also argues that the trial court erred in failing to charge the jury that if either participant acted entirely in self-defense, neither is guilty of affray.[11] Once again, Watson's written request to charge does not appear in the record. At the charge conference, however, both parties quoted the relevant language, giving us a basis for reviewing the request.

In determining whether the trial court's charge to the jury contains error, we read and consider the instructions as a whole.[12] Moreover, "[a] trial court does not err by failing to give a jury charge where the requested charge is not adjusted to the evidence presented at trial."[13]

Although Colvin testified that she was defending herself against Watson, she admitted that a jury had found her guilty of affray for participating in the fight, thus undermining any conclusion that she acted *entirely* in self-defense. Watson's requested charge, therefore, which suggested that either Watson *or* Colvin acted entirely in self-defense, was not adjusted to the evidence.[14] Furthermore, the trial court fully charged the jury on the definition of affray and Watson's justification defense. Read as a whole, the court properly instructed the jury on these legal principles.[15]

3. Finally, Watson argues that the trial court erroneously denied her motion for new trial based on her challenge to the jury pool's racial composition. Although not completely clear from the record, it appears that no African-Americans appeared in the panel of potential jurors from which the parties selected a jury. Watson thus claimed below that "a jury panel was put upon her that did not represent a cross-section of the persons living in Clayton County."

As we recently explained,

> [T]here is no constitutional guarantee that grand or petit juries, impaneled in a particular case, will constitute a representative cross-section of the entire community. To suc-

---

[10] *Hollis v. State*, 201 Ga. App. 224, 226 (5) (411 SE2d 48) (1991); see also *Wiseman v. State*, 249 Ga. 559, 560 (4) (292 SE2d 670) (1982) (where trial court's jury instruction covers the principle of law in a request to charge, "[t]he failure to charge the language requested, even if that language is perfect, is not reversible error").

[11] See *Hawkins*, supra.

[12] See *Jackson v. State*, 258 Ga. App. 806, 811 (5) (575 SE2d 713) (2002).

[13] *Render v. State*, 257 Ga. App. 477, 479 (3) (571 SE2d 493) (2002); see also *Jackson*, supra.

[14] See *Jackson*, supra at 812 (5) (b); *Render*, supra.

[15] See *Mitchell*, supra.

cessfully challenge a jury array based on racial composition, purposeful discrimination must be shown. That burden is not carried by merely presenting evidence that a single jury panel contained a disproportionately small percentage of African-Americans compared to the population at large. Rather, the proper inquiry concerns the procedures for compiling the jury lists and not the actual composition of the grand or traverse jury in a particular case.[16]

At the hearing on Watson's motion for new trial, the Clerk of the Clayton County Jury Commissioners testified that potential jurors are randomly selected for jury duty from a master traverse jury list. The commissioners compile the master list using the voter registration list, as well as other available sources, and, based on the most recent available census and additional population information, adjust the list to reflect the racial demographics in the county. The clerk further testified that 26.93 percent of the citizens on the master list used at the time of Watson's trial were African-American.

The trial court concluded that Watson failed to show purposeful discrimination. We agree. The record reveals that Clayton County compiles its traverse jury list to reflect the county's racial make-up and that potential jurors are selected randomly from that list. In an effort to show underrepresentation on the master list, Watson asserts on appeal that "African-Americans represented over fifty percent of the population in Clayton County on the day of [her] trial." But she cites no record evidence supporting this claim, and we have found none. Furthermore, as noted above, the fact that no African-Americans appeared on her jury panel does not prove purposeful discrimination.[17]

Because Watson "failed to establish any flaw in the selection process, such as manipulation, misuse, or systematic exclusion of cognizable groups, the trial court properly rejected [her] challenge to the array."[18] Accordingly, this enumeration of error provides no basis for reversal.[19]

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

DECIDED JUNE 6, 2003.

*Michael B. King*, for appellant.

---

[16] (Punctuation and footnotes omitted.) *Glass v. State*, 255 Ga. App. 390, 401 (10) (a) (565 SE2d 500) (2002).

[17] See id.

[18] *Riddles v. State*, 251 Ga. App. 525, 526-527 (1) (554 SE2d 737) (2001).

[19] See *Glass*, supra; *Riddles*, supra; *Kent v. State*, 245 Ga. App. 531-532 (1) (538 SE2d 185) (2000).

*Keith C. Martin, Solicitor-General, Tasha M. Mosley, Assistant Solicitor-General*, for appellee.