**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 7, 2014**

# In the Court of Appeals of Georgia

A14A0096. YOUNG v. THE STATE.                                   DO-004 C

DOYLE, Presiding Judge.

Michael Lewis Young appeals from the denial of his motion for new trial following his conviction by a jury of violating the Computer or Electronic Pornography and Child Exploitation Prevention Act of 2007[1] ("Computer Child Exploitation") (two counts) and attempting to commit the felonies[2] of aggravated child molestation[3] and child molestation[4] (two counts each). Young contends that (1) the trial court erred by excluding his expert's testimony on his lack of predisposition

---

[1] OCGA § 16-12-100.2 (d) (2010). The Code section was amended after Young committed the offenses in this case. See Ga. L. 2013, p. 663, § 3.

[2] OCGA § 16-4-1.

[3] OCGA § 16-6-4 (c).

[4] OCGA § 16-6-4 (a) (1).

to commit the offenses, (2) he was denied his Constitutional right to be present during certain bench conferences, (3) the evidence was insufficient to support the guilty verdict, (4) the trial court gave erroneous jury instructions, (5) he received ineffective assistance of counsel, and (6) his sentence was unlawful. For the reasons that follow, we affirm.

Construed in favor of the verdict,[5] the evidence shows that Young visited the Craigslist website and looked in the "Casual Encounters" section for sexual companionship. He encountered a listing from "daddychris.520@gmail.com" seeking a "discreet" male who "would like to teach the finer aspects of life to a young female friend of mine." The listing was placed by a police detective working with an FBI task force investigating crimes against children. Young responded expressing interest and describing his body and penis size and attaching a photo of himself nude. The detective replied and the following email exchange occurred:

> Detective: Thank-you for your reply. I just need to know what level of open mindedness and discretion you have. I have two step-daughters, who are not quite the legal age. Both are very beautiful and very much up for this. They are both very mature, open minded, and discreet. If you

---

[5] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

are interested in this out of the ordinary experience please respond. . . discretion is a must.

Young: I would be interested and will be very discrete [sic] as well [a]s I will need to make sure no on finds out as well. But would be very interested[.] Let me know how we meet[.]

Detective: My step-daughters are both equally beautiful . . . Kara is 12 and Nikki is 14 . . . both are very into this . . . if this is something you would be interested in tell me in detail what you would do with them . . . cops [cannot] say that . . . and you must send the picture . . . discretion is a must.

Young: Gotcha, As young ladies they would need to know how to [perform oral sex] . . . I will teach . . . We can slowly teach them what it is like to receive oral pleaseure [sic] from me as well and finally with full intercourse and my (smaller than average) [penis] inside their vagina they will learn how to relax and have a great orgasm as part of this pleasurable experience. . . .

Detective: Ok I believe we are thinking on the same level, I believe this could be a good relationship. I am glad to see that you have a smaller penis, that would be better for Kara the 12-year-old.

Young: Would you like to do this [T]hursday evening? I have a nice two bedroom apartment we can all hang out . . . for a while and work our way to the fun? I am in Dunwoody . . . .

The detective and Young then proceeded to negotiate a meeting time and place. Young also asked for pictures of the girls, and the detective replied that he did not want to send pictures because "they could one day be traced back to me," feigning a fear of being caught. Young replied that he understood that concern is "legit," and that the girls "sound very cute and just tell me if there is anything I missed out on that you want me to teach them when we are together[.]" Young later asked if the girls were developing breasts yet, and the detective and Young continued trading emails to arrange a mutually agreeable meeting at a hotel, whereupon Young was arrested. The entire email exchange took place in several emails over the course of four days. At the time of his arrest, Young's license plate had been removed, he had a note with the detective's email address and phone number and, as discussed in emails, Young's vehicle contained a pack of condoms and some wine coolers.

Young was charged with six counts based on his conduct and, following a trial, a jury found him guilty on all counts. Young moved for a new trial, which was denied, giving rise to this appeal.

1. Young contends that the trial court erred by refusing to admit testimony from his expert witness that would support his sole defense of entrapment. Specifically, he argues that his expert, Dr. Dave Davis , would have testified that Young was not

4

predisposed to have sexual contact with underage children, which is one of the prima facie elements of entrapment he must show.[6] This Court recently addressed this question regarding the same expert under similar facts in *Lopez v. State*.[7] We find that analysis applicable here:

> Under Georgia law, where (a) the path from evidence to conclusion is not shrouded in the mystery of professional skill or knowledge, and (b) the conclusion determines the ultimate issues of fact in a case, the jury must make the journey from evidence to conclusion without the aid of expert testimony. In general, expert testimony that a defendant does not have the psychological characteristics of a person who is predisposed to having sexual contact with underaged children invades the province of the jury as to the ultimate issue, that is, the defendant's guilt or innocence, and is properly excluded. We conclude that the trial court did not abuse its discretion in ruling that whether [Young] would have committed the crime[s] charged absent the inducement of law enforcement officers was a question the jury could and must resolve without the assistance of expert opinion evidence and that Dr. Davis's opinions on the subject were therefore inadmissible.[8]

---

[6] See *Millsaps v. State*, 310 Ga. App. 769, 773 (3) (714 SE2d 661) (2011) ("If a defendant establishes a prima facie case of entrapment, the burden is then upon the State to disprove entrapment beyond a reasonable doubt.") (punctuation and footnote omitted.)

[7] __ Ga. App. __, __ (4) (Case No. A14A0092; decided April 2, 2014).

[8] (Punctuation and citations omitted.) Id.

2. Young also argues that the trial court should have granted his motion for new trial because he was denied his Constitutional right to be present at a critical stage of his trial when bench conferences occurred during voir dire. But the voir dire process was not transcribed and Young makes no argument that he objected during trial. At the hearing on Young's motion for new trial, Young's trial counsel explained that the trial court instructed jurors to stand and answer questions during voir dire, and if they had something they wanted to speak about more privately, they could approach the bench. Young's counsel stated that he was present for all of the conferences and each conference would happen while Young was seated at counsel's table, six or eight feet away. Young's counsel would tell Young what was happening, and both Young and his counsel were present in the courtroom during the entire process, yet neither objected. Under these circumstances, "because all of the bench conferences in question took place while [Young] was in the courtroom, and [he] voiced no objection to them, [he] has waived appellate review of the alleged improper conferences."[9]

---

[9] *Kennedy v. State*, 274 Ga. 396, 397 (3) (554 SE2d 178) (2001). See also *Smith v. State*, 284 Ga. 599, 609 (4) (669 SE2d 98) (2008) (because there was "no contemporaneous objection to the trial court's course of action . . . the trial court did not err in denying [the defendant's] motion for new trial on this ground.").

3. Young next contends that the evidence was insufficient to support the guilty verdict because he never had contact with a child or anyone posing as a child. He relies on *Cosmo v. State*, which held that the plain meaning of OCGA § 16-12-100.2 (d)(1)[10] "cannot be construed to encompass [a defendant's] communication with only an adult or a person known to be an adult,"[11] so no violation of that Code section occurred absent some communication with a minor. But, after the briefing in this case, *Cosmo* was reversed by the Supreme Court of Georgia, which concluded "that direct communication [with a minor] was not required for a conviction pursuant to the crime as charged in this case," because Cosmo was accused of *attempting* to solict or entice a person he believed to be a child.[12] The Court explained that

_____

[10] At the time of Young's and Cosmo's offenses, this Code section provided, in relevant part: "It shall be unlawful for any person intentionally or willfully to utilize a computer on-line service or Internet service . . . to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice a child or another person believed by such person to be a child to commit any illegal act . . . relating to the offense of sodomy or aggravated sodomy [or] . . . relating to the offense of child molestation or aggravated child molestation; . . . ." It was later amended to include attempting to solicit "any person having custody or control of a child, or another person believed by such person to have custody or control of a child." See Ga. L. 2013, p. 663, § 3.

[11] *Cosmo v. State*, 320 Ga. App. 397, 402 (1) (739 SE2d 828) (2013), reversed by *State v. Cosmo*, __ Ga. __, __ (Case No. S13G1070; Case decided Apr. 22, 2014).

[12] *State v. Cosmo*, __ Ga. at __.

7

a solicitation [or enticement] of another may be made by communication with a third party. Just as solicitation of prostitution can be made through a third party pimp, solicitation of a child to commit the acts prohibited by OCGA § 16-12-100.2 (d) (1) may be conducted through an adult intermediary who is believed to be in a position of trust or authority with respect to the child. As the Eleventh Circuit Court stated in *[United States v.] Murrell*,[13] "the efficacy of the statute would be eviscerated if a defendant could circumvent the statute simply by employing an intermediary to carry out his intended objective."[14]

Here, this analysis applies because Young's indictment accused him of essentially the same conduct in violation of the same statute. Accordingly, this enumeration is without merit.

4. Young argues that the trial court gave erroneous jury instructions.

(a) *Failure to give instruction as to mere preparation.* Young argued that his conduct amounted to only mere preparation, and he requested such an instruction, which the trial court declined to give. "In determining whether the trial court's charge to the jury contains error, we read and consider the instructions as a whole. Moreover,

---

[13] 368 F3d 1283 (11th Cir. 2004).

[14] *State v. Cosmo*, __ Ga. at __.

8

a trial court does not err by failing to give a jury charge where the requested charge is not adjusted to the evidence presented at trial."[15]

Young's indictment alleged that he "did intentionally utilize a computer Internet service to attempt to seduce and entice [the victim], a person believed by the accused to be a child, to commit child molestation and aggravated child molestation. . . ." The evidence showed that Young responded to a listing on Craigslist and sent a series of emails to arrange a meeting with the purported underage victims to engage in oral sex and intercourse with them. Such a use of a computer constituted the actual crimes, if the requisite intent was found. It was undisputed that Young used the computer to communicate with the detective about meeting the girls, thus the only issue at trial was his intent. As there was no issue regarding Young's mere preparation to use the computer, the requested charge was not apt.[16] "A defendant is

_____

[15] (Footnote and punctuation omitted.) *Watson v. State*, 261 Ga. App. 562, 565 (2) (b) (583 SE2d 228) (2003).

[16] See generally *Ross v. State*, 255 Ga. 1, 4 (5) (334 SE2d 300) (1985) ("instructions to the jury should be tailored to the indictment and adjusted to the evidence").

not entitled to a jury charge on legal issues which are irrelevant, not tailored to the evidence or factually inapplicable."[17]

(b) *Instruction on law enforcement officer's involvement.* Over Young's objection, the trial court instructed the jury that "the sole fact that an undercover operative or law enforcement officer was involved in the detection and investigation of an offense shall not constitute a defense to prosecution under [OCGA § 16-12-100.2]." This language is taken from OCGA § 16-12-100.2 (g), which was in effect when Young committed the offenses and remains so today. Young argues that based on *Cosmo v. State*, such an instruction was confusing because it implied that the offense can be committed absent any contact with a minor. Nevertheless, as noted in Division 3, that case recently was reversed and as such provides no support for this enumeration.[18]

5. Young argues that he received ineffective assistance of counsel in several ways. We review these assertions under the standard in *Strickland v. Washington*[19]:

---

[17] *Wicks v. State*, 278 Ga. 550, 553 (5) (604 SE2d 768) (2004).

[18] See *State v. Cosmo*, __ Ga. at __.

[19] 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

To succeed on an ineffective assistance claim, a criminal defendant must demonstrate both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance.[20] "There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case."[21] If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court need not examine the other prong.[22] In reviewing the trial court's decision, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[23]

---

[20] See id. at 687-688, 694 (III) (A)-(B).

[21] (Citation and punctuation omitted.) *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004).

[22] See *Strickland*, supra, 466 U. S. at 697 (IV); *Fuller v. State*, 277 Ga. 505, 507 (3) (591 SE2d 782) (2004).

[23] (Punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

11

(a) *Failure to advocate case.* Young argues that his trial counsel failed to zealously advocate his case. In support of this argument, Young points out that his counsel had tried two other felony cases in the same week, stemming from similar facts.[24] Based on his concerns about counsel's preparation time, Young asked counsel to request a continuance. Nevertheless, Young's counsel testified at the motion for new trial hearing that he had been representing him since before indictment, and his preparation for the three cases was much the same. He was able to investigate the case and file numerous pre-trial motions and briefs. The State's case involved only one witness, whom counsel was able to research prior to trial, and it had a straightforward factual scenario. Trial counsel further testified that "I knew this was going to be tried, there was no doubt in my mind about that. . . [I]t was clear that . . . these cases were going to be tried that week. . . ." Under these circumstances, we discern no deficient performance nor has Young met his burden of showing a reasonable probability that

---

[24] Counsel for the State had tried the same three back-to-back cases stemming from similar facts. See *Maddox v. State*, __ Ga. App. __ (Case No. A14A0091 ); *Lopez v. State*, __ Ga. App. at __.

the outcome would have been different had his trial counsel elected to seek a continuance.[25]

(b) *Failure to seek interlocutory appeals of pre-trial rulings*. Young points to several adverse pre-trial rulings and argues that his trial counsel performed deficiently by failing to request the trial court to certify the issues for immediate review and then apply for an interlocutory appeal in this Court.

(i) *Denial of special demurrer*. Pretermitting the merits of such a claim[26] and the discretionary nature of such an appeal,

> [Young] is unable to establish prejudice. A defendant is entitled to be tried on an indictment that is perfect in form. And, if an indictment is imperfect, a defendant may file a special demurrer challenging the form of the indictment. If no special demurrer is filed, any error in the indictment's form is waived. If the demurrer is granted, the trial court quashes the indictment. However, the quashing of an indictment merely bars trial on the flawed indictment; it does not bar the State from reindicting the defendant. Thus, even if [Young's] attorney had filed a [special] demurrer, it would not have prevented the State from reindicting and trying [Young]. And [Young] does not [show] that the

---

[25] See *Manaois v. State*, 300 Ga. App. 176, 179 (4) (684 SE2d 315) (2009) (deciding not to seek a continuance was reasonable trial strategy).

[26] Compare *State v. Marshall*, 304 Ga. App. 865, 868 (698 SE2d 337) (2010) (finding similar indictment sufficient).

[allegedly] imperfect indictment prejudiced his defense in any way. Under these circumstances, [Young] has failed to show that he was prejudiced by his attorney's failure to file such demurrer.[27]

(ii) *Exclusion of expert testimony.* In light of our ruling in Division 1 finding no error in the exclusion of the testimony proffered by Young's expert, failing to seek an earlier appeal of this ruling cannot support a claim of ineffective assistance of counsel.

(iii) *Failure to request transcription of voir dire and opening and closing arguments.* Young asserts that this was deficient performance, but he does not demonstrate how recording these phases of trial would create a reasonable probability of a different trial outcome.

(iv) *Waiver of Jackson-Denno hearing.* After his arrest, Young was transported back to the Sheriff's department for an interview. An officer read him a written *Miranda* waiver form and Young signed it. At trial, the officer testified that he observed Young to be sober and coherent, and he did not make any promises or threats to induce Young to make a statement; and Young never refused to answer

---

[27] (Punctuation omitted.) *Coleman v. State*, 318 Ga. App. 478, 481 (2) (735 SE2d 788) (2012).

questions, nor did he request an attorney or equivocate on speaking to police. Based on our review of the record, we discern no basis for a ruling that Young's waiver was not knowing and voluntary.[28] Accordingly, this argument fails to support Young's ineffective assistance claim.[29]

(v) *Waiver of right to be present at bench conferences*. Young argues that his trial counsel's failure to object to Young's non-participation in bench conferences during voir dire was somehow deficient performance. Nevertheless, Young does not identify anything that would have changed had he been present, and trial counsel pointed out at the motion for new trial hearing that he had already twice interviewed the exact same jury pool as he tried the other two similar cases that week. In the absence of some showing of prejudice to Young, this argument fails.

(c) *Failure to make objections at trial*. Young contends that his trial counsel failed to object to or otherwise cure certain testimony elicited from the State's single witness, Detective Lyons. He points to references to the witness's experience with

---

[28] See *Watkins v. State*, 289 Ga. 359, 363 (4) (711 SE2d 655) (2011) (finding no error in trial court's conclusion that waiver was knowing and voluntary based on detective's testimony).

[29] See *Funes v. State*, 289 Ga. 793, 796 (3) (a) (716 SE2d 183) (2011) ("trial counsel's decision not to pursue [a] meritless issue does not constitute ineffective representation").

15

"actual victims that have gone through this same type of stuff," and statements such as "Craig[slist] is a place where children are being victimized. Where there's predators that go on-line specifically just to locate children." But trial counsel recalled that he had evaluated the witness, and he decided to not make certain objections or motions to avoid drawing attention to potentially inflammatory testimony: "[The witness] was going to, no matter what you say he was going [to] come back and double up on it. He was that kind of guy." Instead, trial counsel explained that his strategy was, in part, to show the detective to be a "rogue cop, who was just out there to entrap people and ruin their lives." "Trial counsel's strategy was not unreasonable and thus affords no basis for an ineffective assistance of counsel claim."[30]

(d) *Requesting an improper jury instruction*. Trial counsel requested an instruction on the Computer Child Exploitation offenses that quoted verbatim the relevant Code section, OCGA § 16-12-100.2 (d), which defines the offense, in part, as attempting to "entice *a child* or another person believed by such person to be a

---

[30] *Leonard v. State*, 279 Ga. App. 192, 194 (2) (a) (630 SE2d 804) (2006). See *Hargrove v. State*, 289 Ga. App. 363, 368 (4) (a) (657 SE2d 282) (2008) (reasonable tactical decisions "are within the lawyer's exclusive province and do not amount to ineffective assistance of counsel.") (punctuation omitted).

16

child to commit" child molestation. Young now argues that this was improper because the indictment merely accused him of attempting to entice "a person believed by the accused to be a child." Thus, he argues, the jury instruction authorized a conviction in a manner not alleged in the indictment. But "[i]n determining whether the trial court's charge to the jury contains error, we read and consider the instructions as a whole."[31] The trial court instructed the jury that

> [n]o person can be convicted of any crime unless and until each element of the crime *as charged* is proven beyond a reasonable doubt. In these cases the burden of proof rests upon the State to prove every material allegation *of the indictment* and every essential element of the crime charged, again, beyond a reasonable doubt. . . [A]s to each of these individual counts, one through six, if under the evidence and the law you find beyond a reasonable doubt that the Defendant did commit the offense *that's set out in that particular count of the indictment*, in that event you would be authorized to convict him. . . .[32]

---

[31] *Watson v. State*, 261 Ga. App. 562, 565 (2) (b) (583 SE2d 228) (2003).

[32] (Emphasis supplied.)

17

Further, while the jury did have a copy of the indictment, they did not have a copy of the statute. Under these circumstances, the jury instructions given did not mislead the jury.[33]

6. Young finally contends that his sentence on all six counts is unlawful because (a) certain counts were included in each other and should have merged, and (b) the two alleged victims were fictitious.

(a) *Merger*. Young was indicted and convicted for committing six offenses: Computer Child Exploitation, attempted aggravated child molestation, and attempted child molestation for each of two victims. On appeal he contends that the trial court erred by sentencing him for six offenses because the same facts were used to prove multiple offenses. This, however, ignores the language of the indictment, which based each count on different conduct. Each pair of counts, including the Computer Child Exploitation counts, was alleged against a different victim. Further, the two child molestation counts alleged different attempted conduct (intercourse) from the aggravated child molestation counts (oral sex). Thus, "each of those counts was a

---

[33] Cf. *Redding v. State*, 293 Ga. 766, 769 (3) (749 SE2d 717) (2013).

18

separate and distinct crime."[34] The email evidence, which outlines in detail his planned encounter with the victims, supports a finding that Young intended the distinct sex acts with each victim.

(b) *Fictitious victims*. Young also contends that because the victims were fictitious, and his conduct was limited to a single set of facts leading to the arranged meeting, he should only be convicted of one count for each of the three types of offenses, instead of two as alleged in the indictment. But Young was accused of *attempting* to do each of the offenses, and the fact that the offenses were not consummated with actual victims does not decriminalize his conduct.[35] "[T]o

---

[34] *Smith v. State*, 320 Ga. App. 408, 413 (2) (a) (740 SE2d 174) (2013), citing *Metts v. State*, 297 Ga. App. 330, 336 (5) (677 SE2d 377) (2009) (child molestation did not merge into aggravated child molestation because the offenses were proven by different acts of molestation). To the extent that Young argues that the evidentiary basis for each count was "used up" by another count, that analysis was disapproved of in *Drinkard v. Walker*, 281 Ga. 211, 212, 215 (636 SE2d 530) (2006), which addressed whether the *same conduct* can support multiple convictions. See *Lucky v. State*, 286 Ga. 478, 481 (2) n. 5 (689 SE2d 825) (2010).

[35] See *Collins v. State*, 297 Ga. App. 364, 365 (1) (677 SE2d 407) (2009) ("An attempt to commit a crime consists of three elements: first, the intent to commit the crime; second, the performance of some overt act towards the commission of the crime ; and third, *a failure to consummate its commission*.") (punctuation omitted; emphasis supplied).

19

constitute an attempt there must be an act done in pursuance of the *intent*,"[36] and there was ample evidence that Young's intent was to molest two specific victims. For example, each victim was identified to Young by name, age, height, and weight; Young explicitly described the sex acts he would perform with each of them; he referred to meeting "*all* of you," i.e. the fictitious step-father and the two girls; he requested "pictures of *them*"; and he sought confirmation that "*the girls* are willing and up for this."[37] Thus, it is clear that the steps Young took were toward his goal of molesting two specific victims, which justified a finding of criminal intent as to each count in the indictment.

Further, in *Lopez*,[38] this Court affirmed convictions for Computer Child Exploitation and attempted aggravated child molestation despite the fact that the victim was fictitious. The Court found the evidence sufficient on both counts because the defendant *believed* the victim to be a child when he was communicating via a

---

[36] (Emphasis supplied.) *Wittschen v. State*, 259 Ga. 448 (1) (383 SE2d 885) (1989), quoting *Groves v. State*, 116 Ga. 516, 517-518 (42 SE 755) (1902).

[37] (Emphasis supplied.)

[38] __ Ga. App. at __ (1) (a) and (b).

20

computer and because the defendant took substantial steps toward the molestation offense. This rationale supports the multiple convictions in this case.

Finally, with respect to the Computer Child Exploitation offenses, we are guided by the rationale in *State v. Cosmo*, which clarified that the offense, as charged in this case, does not require actual interaction with a minor.[39] Therefore, no minor need be involved in the offense at all. There is no evidence that the State took advantage of Young's interest and fabricated more victims than Young intended to harm. Accordingly, based on the facts of this case, we discern no reversible error in Young's sentence on all six counts.

*Judgment affirmed. Miller and Dillard, JJ., concur.*

---

[39] See *State v. Cosmo*, __ Ga. at __.