# A11A0547. SINGLETARY v. THE STATE.
### (713 SE2d 698)

DILLARD, Judge.

Douglas Williams Singletary appeals his conviction for affray, contending that the evidence was insufficient to support his conviction beyond a reasonable doubt because the State failed to prove that he engaged in a fight in a public place.[1] For the reasons noted infra, we agree and reverse Singletary's conviction.

Viewing the evidence in the light most favorable to the jury's verdict,[2] the record shows that on January 4, 2010, Singletary was a prisoner in the Hall County jail. Early that morning, Singletary and another inmate, Kevin Eccles, were clearing breakfast trays from a communal area in their cell pod when the two became engaged in a physical altercation. An officer assigned to the area became aware of the fight when he noticed the reactions of locked-up inmates, who were looking down into the communal area.

Several officers responded to the fray and commanded Singletary and Eccles to stop fighting. The two inmates, however, refused to cease their fisticuffs, and the officers eventually had to step in and separate them. For his part, Singletary resisted the officers' efforts to restore order while unleashing a stream of obscenities at them; but he was ultimately subdued with a taser, handcuffs, and leg shackles. And while Eccles later characterized his altercation with Singletary as merely "a little tussle," this unfortunate encounter left several puddles of blood on the floor.

Thereafter, Singletary was indicted on charges of felony obstruction, battery, and affray, and he was ultimately convicted by a jury of misdemeanor obstruction and affray.[3] The trial court denied Singletary's motions for directed verdict and a new trial based on the insufficiency of the evidence. This appeal follows, in which Singletary only challenges his conviction for affray.

Specifically, Singletary argues that the evidence is insufficient to sustain his conviction for affray because the State was incapable of proving that the Hall County jail was a "public place" within the meaning of OCGA §§ 16-1-3 (15) and 16-11-32. We agree.

At the outset, we note that the offense of "affray" is defined as "fighting by two or more persons in some public place to the

---

[1] *See* OCGA § 16-11-32 ("An affray is the fighting by two or more persons in some public place to the disturbance of the public tranquility.").

[2] *See, e.g., English v. State*, 301 Ga. App. 842, 842 (689 SE2d 310) (2010) (holding that on appeal a defendant no longer enjoys a presumption of innocence and that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (footnote and punctuation omitted)).

[3] Prior to trial, the State nolle prossed the battery charge.

disturbance of the public tranquility."[4] Additionally, OCGA § 16-1-3 (15), which applies to OCGA § 16-11-32 (a),[5] defines "public place" as "any place where the conduct involved may reasonably be expected to be viewed by people other than members of the actor's family or household."[6] And under this general definition, we have previously (and understandably) held that the determination of what constitutes a "public place" is a question of fact for the jury.[7]

Nevertheless, the general—and fairly sweeping—definition of "public place" was narrowed somewhat in 1996, when the General Assembly amended Georgia's public-indecency statute, OCGA § 16-6-8, to include the following: *"For purposes of this Code section only,* 'public place' shall include jails and penal and correctional institutions of the state and its political subdivisions."[8] This 1996 enactment, then, served to limit the broader, earlier-enacted definition of "public place."[9]

---

[4] *See* OCGA § 16-11-32 (a); *see also In the Interest of X. W.,* 301 Ga. App. 625, 630 (4) (688 SE2d 646) (2009) (though challenged on other grounds, upholding adjudication of delinquency based on affray that occurred inside public-school restroom). *See generally Watson v. State,* 261 Ga. App. 562, 564 (1) (583 SE2d 228) (2003) (holding that "[p]articipants in the affray must intend to fight; unwilling participants, or those acting solely in self-defense, lack the necessary intent" (footnote omitted)).

[5] *See generally* OCGA § 16-1-3 (containing "definitions" for Title 16).

[6] OCGA § 16-1-3 (15); *see also* Ga. L. 1968, pp. 1249, 1265, § 1.

[7] *See Collins v. State,* 191 Ga. App. 289, 289 (1) (381 SE2d 430) (1989) ("Whether the act was performed in a 'public place' within the meaning of the statute was a question of fact which the trial court properly left for the jury's resolution." (citation omitted)); *Greene v. State,* 191 Ga. App. 149, 150 (381 SE2d 310) (1989) ("What constitutes a 'public place' within the meaning of our statute[ ] is a question of fact which must be proved or disproved by the evidence in each case." (citation and punctuation omitted)); *Clark v. State,* 169 Ga. App. 535, 536 (3) (313 SE2d 748) (1984) ("Whether an act is performed in a 'public place' is a jury question." (citation omitted)); *see also United States v. Floyd,* 281 F3d 1346, 1349 (III) (A) (2002) (public intoxication); *Martin v. State,* 291 Ga. App. 363, 366 (1) (b) (662 SE2d 185) (2008) (same); *Ridley v. State,* 176 Ga. App. 669, 670 (337 SE2d 382) (1985) (same). *Cf. People v. Giacinti,* 44 Ill. App. 3d 699, 702 (358 NE2d 934) (Ill. App. 3d 1974) (noting, in context of public-indecency statute that used a similar definition for "public place," that "when imprisoned, the prisoner is deprived of his private life" and "[h]is entire existence becomes public, open to the view of other prisoners, as well as prison officials"). *Compare Favors v. State,* 104 Ga. App. 854, 855 (123 SE2d 207) (1961) (holding, in case concerning public intoxication, that the yard of a county jail may become a public place "under certain circumstances, and whether the yard of a certain jail is a place of public gathering or assembly in a given instance is for the jury"). *But see Tooke v. State,* 4 Ga. App. 495, 504-08 (4) (61 SE 917) (1908) (analyzing the nature of "public places" and holding that "while a town guardhouse may be made a public place by an assemblage of persons there, it is not primarily nor per se such a place" in context of prohibited liquor sales).

[8] OCGA § 16-6-8 (d) (emphasis supplied); *see* Ga. L. 1996, pp. 312-13, § 1; *see also Minor v. State,* 232 Ga. App. 246, 246 (1) (501 SE2d 576) (1998) ("Correctional institutions are public places within the meaning of the public indecency statute." (citing OCGA § 16-6-8 (d))).

[9] *See Berry v. City of East Point,* 277 Ga. App. 649, 654 (6) (c) (627 SE2d 391) (2006) (holding that later-enacted provision governed over earlier-enacted provision and that "a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent, to resolve any inconsistency between them" (citation and punctuation

In construing these statutes, "we apply the fundamental rules of statutory construction that require us to construe the statute[s] according to [their] terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage."[10] Additionally, "[a]ll statutes are presumed to be enacted with full knowledge of existing law[,] and their meaning and effect [are] to be determined with reference to the constitution as well as other statutes and decisions of the courts."[11]

With these guiding principles in mind, we conclude that if the General Assembly had intended for the definition of "public place" in OCGA § 16-1-3 (15) to include "jails and penal and correctional institutions of the state and its political subdivisions," it would have been unnecessary to specifically define "public place" as *including* such institutions in the later-enacted public-indecency statute.[12] Further, the public-indecency statute *explicitly* provides that jails and penal/correctional institutions are only "public places" for purposes of that particular Code section.[13]

Taking the words of OCGA § 16-1-3 (15) and OCGA § 16-6-8 (d) at their plain meaning, avoiding an interpretation that would result in surplusage, and applying the last-enacted rule, we conclude that

---

omitted)); *see also United Savings Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U. S. 365, 371 (II) (108 SC 626, 98 LE2d 740) (1988) (Scalia, J.) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." (citations omitted)).

[10] *Currid v. DeKalb State Ct. Probation Dept.*, 285 Ga. 184, 187 (674 SE2d 894) (2009) (citation and punctuation omitted); *see also* 2A Norman J. Singer, Statutes and Statutory Construction § 46:06 (6th ed. 2000) ("It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute.").

[11] *Higdon v. City of Senoia*, 273 Ga. 83, 86 (3) (538 SE2d 39) (2000) (citation omitted); *see also* Singer, *supra* note 10, § 46:05 (noting that "statutes must be construed to further the intent of the legislature as evidenced by the *entire statutory scheme*" (emphasis supplied)); *id.* § 46:07 ("The legislature is presumed to have intended to avoid surplusage in the words and sentences and therefore it is permissible to interpret the statute to avoid such a pitfall.").

[12] *See Harris v. State*, 286 Ga. 245, 251 (5) (686 SE2d 777) (2009) (applying principles of statutory construction to Title 16's various definitions of "motor vehicle"). This observation is further bolstered by the fact that prior to its amendment, the public-indecency statute applied OCGA § 16-1-3 (15)'s general definition of "public place," which left the question to the jury. *See, e.g., Collins*, 191 Ga. App. at 289 (1); *Greene*, 191 Ga. App. at 149-50; *Clark*, 169 Ga. App. at 536 (3); *Rushing v. State*, 133 Ga. App. 434, 435 (1) (211 SE2d 389) (1974) ("Cases construing factual situations based on former statutes have no application, nor do those applying the common law rules or definition of a public place, for here we must apply the definition given us by statute. Thus, a question of fact was presented for resolution by the jury." (punctuation omitted)).

[13] *See Harris*, 286 Ga. at 251 (5) ("[The view] that the [phrase] *already meant* what the General Assembly later used many words to define would render those many words mere surplusage, in violation of [a] fundamental canon of statutory construction." (citation omitted)); Antonin Scalia, A Matter of Interpretation: Federal Courts and the Law 22 (Princeton Univ. Press 1997) ("The text is the law, and it is the text that must be observed.").

"public place" includes "jails and penal and correctional institutions of the state and its political subdivisions" *only* in the context of the public-indecency statute. Therefore, as a matter of law, Singletary cannot be/could not have been convicted of affray for engaging in a fight in the Hall County Jail, which is not a "public place" and, thus, cannot satisfy an essential element of the crime of affray.[14]

Accordingly, for all of the foregoing reasons, we reverse Singletary's conviction of misdemeanor affray and remand this case to the trial court for resentencing consistent with this opinion.

*Judgment reversed and case remanded for resentencing. Smith, P. J., and Mikell, J., concur.*

DECIDED JULY 6, 2011.

*Travis A. Williams, H. Bradford Morris, Jr.,* for appellant.
*Lee Darragh, District Attorney, John D. West, Jr., Assistant District Attorney,* for appellee.

---

[14] *See Gamble v. State,* 113 Ga. 701, 703-04 (39 SE 301) (1901) (engaging in analysis of what constitutes a public place and reversing conviction because essential element of crime was missing, *i.e.,* a private dance "was not shown to be so open to the general public[,] or to any portion of the public[,] as to constitute it a public place within the meaning of the law of affrays").