**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 22, 2022**

# In the Court of Appeals of Georgia

A21A1781. KEMRON ENVIRONMENTAL SERVICES, INC. v. PROSPIRA PAINCARE, INC.

DILLARD, Presiding Judge.

Kemron Environmental Services, Inc. appeals from the trial court's grant of Prospira Paincare, Inc.'s motion to modify a default judgment, arguing the trial court erred because the motion was filed more than 90 days after the judgment was served on Prospira.[1] For the reasons set forth *infra*, we agree with Kemron and reverse.

Paul Coad formerly served as the director of information technology for Kemron. In May 2020, Kemron obtained a judgment against Coad for $820,526 based on his fraudulent purchase of equipment and services for his own benefit. Coad

---

[1] Oral argument was held in this case on October 5, 2021, and is archived on the Court's website. *See* Court of Appeals of Georgia, Case No. A21A1781 (Oct. 5, 2021), *available at* https://www.gaappeals.us/oav/A21A1781.php.

subsequently went to work for Prospira. Then, in August 2020, Kemron initiated this continuing garnishment action against Coad, naming Prospira as the garnishee. Upon being served, Prospira withheld $374.52 from Coad's wages, sent Kemron a check for that amount, and promptly fired Coad. But Prospira did not file a formal answer or otherwise respond to the continuing garnishment within 45 days; and as a result, Kemron sought a default judgment against Prospira.

In October 2020, Kemron obtained a default judgment against Prospira for $835,349. Then, on November 3, 2020, Kemron served Prospira with a copy of the default judgment. But Kemron did not file an affidavit of service of the default judgment with the trial court until December 1, 2020. Thereafter, on February 2, 2021, Kemron obtained a writ of fieri facias against Prospira and recorded it on the general execution docket.

On February 17, 2021, 107 days after Prospira was served with the default judgment and 78 days after Kemron filed the affidavit of service with the trial court, Prospira filed a motion to modify the default judgment and retract the fi. fa. In doing so, Prospira argued that (1) it was entitled to have the default judgment modified under OCGA § 18-4-24 (a) because it filed its motion within 90 days of Kemron filing its affidavit of service with the trial court; and (2) the maximum amount

Prospira owed Kemron was $1,099.54—*i.e.*, 25 percent of Coad's gross earnings between the filing of the garnishment action and the termination of his employment with Prospira.[2] Kemron opposed Prospira's motion, arguing, *inter alia*, that it was not timely filed. Specifically, Kemron maintained that the 90-day period for filing the motion under OCGA § 18-4-24 (a) began running when Prospira was served on November 3, 2020, not when the affidavit of service was filed with the trial court on December 1, 2020.

Following a hearing, the trial court granted Prospira's motion, finding that it had been timely filed. The court agreed with Prospira that OCGA § 9-11-4 (h) governed when the 90-day tolling period began for a motion to modify a default judgment under OCGA § 18-4-24 (a), reasoning that because

> the return of service was not made until more than five (5) business days after service upon the Garnishee, pursuant to OCGA § 9-11-4 (h), [Prospira's] ninety (90) days to file its Motion, pursuant to OCGA § 18-4-24 (a), did not begin counting until the return of service was filed with the Clerk, and not the actual date of service upon [Prospira].

---

[2] Prospira also argued that Kemron did not properly serve it with the default judgment, but the trial court rejected this argument and it is not at issue in this appeal.

The trial court thus modified the default judgment to $1,149.54—Coad's wages subject to garnishment plus the $50 fee to open default—and canceled the fi. fa. We then granted Kemron's application for a discretionary appeal, which is now before us.

Kemron argues that because Prospira's motion to modify the default judgment was filed 107 days after being served with the default judgment, it was untimely under OCGA § 18-4-24 (a) and should have been denied. Prospira, on the other hand, focuses on the portion of OCGA § 18-4-24 (a) providing that a plaintiff must *serve* a garnishee with a default judgment "as provided in Code Section 9-11-4," which sets forth various means of accomplishing service. OCGA § 9-11-4 (h) provides:

> The person serving *the process* shall make proof of such service with the court in the county in which the action is pending within five business days of the service date. If the proof of service is not filed within five business days, the time for the party served to answer *the process* shall not begin to run until such proof of service is filed.[3]

And because Kemron did not file its affidavit of service with the trial court within five business days of accomplishing the service, Prospira contends the time for it to file a motion to modify the default judgment began to run when that affidavit was filed with the court on December 1, 2020, thus making its motion timely. For its part,

---

[3] OCGA § 9-11-4 (h) (emphasis supplied).

Kemron acknowledges that OCGA § 18-4-24 (a) requires service using one of the mechanisms set forth in OCGA § 9-11-4, but it nevertheless maintains OCGA § 9-11-4 (h)'s tolling period does not apply and cannot contravene the plain language of OCGA § 18-4-24 (a). We agree with Kemron.

In interpreting any statute, we necessarily begin our analysis with "familiar and binding canons of construction."[4] And in considering the meaning of a statute, our charge is to "presume that the General Assembly meant what it said and said what it meant."[5] So, we must afford the statutory text its plain and ordinary meaning,[6] consider the text contextually,[7] read the text "in its most natural and reasonable way,

---

[4] *Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687) (2014).

[5] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation & punctuation omitted); *accord Arby's Rest. Grp., Inc. v. McRae*, 292 Ga. 243, 245 (1) (734 SE2d 55) (2012); *Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013).

[6] *Deal*, 294 Ga. at 172 (1) (a); *see State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies)[.]"); *Singletary v. State*, 310 Ga. App. 570, 572 (713 SE2d 698) (2011) ("In construing these statutes, we apply the fundamental rules of statutory construction that require us to construe the statutes according to their terms, [and] to give words their plain and ordinary meaning[.]" (citation & punctuation omitted)).

[7] *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 10 (II) (B) (133 SCt 2247, 186 LE2d 239) (2013) (Scalia, J.) ("Words that can have more than one meaning are given content, however, by their surroundings." (citation & punctuation omitted)); *Deal*,

5

as an ordinary speaker of the English language would,"[8] and seek to "avoid a construction that makes some language mere surplusage."[9] Thus, when the language of a statute is plain and susceptible of only one natural and reasonable construction, "courts must construe the statute accordingly."[10]

Here, the relevant language of OCGA § 18-4-24 (a) is clear:

> On a motion filed *not later than 90 days from the date the garnishee was served with such default judgment*, the garnishee may, upon payment of any costs paid by the plaintiff to the clerk of court for the initiation of the action, and service on the garnishee, have such default judgment

294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *Hendry v. Hendry*, 292 Ga. 1, 3 (1) (734 SE2d 46) (2012) (same); *In the Interest of L. T.*, 325 Ga. App. 590, 592 (754 SE2d 380) (2014) (same); *Martinez*, 325 Ga. App. at 273 (2) (same); *see also* OCGA § 1-3-1 (b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words . . . ."); *Scherr v. Marriott Int'l, Inc.*, 703 F3d 1069, 1077 (II) (C) (2) (7th Cir. 2013) (Manion, J.) ("In statutory construction cases, we begin with the language of the statute itself and the specific context in which that language is used." (citation & punctuation omitted)).

[8] *Deal*, 294 Ga. at 172-73 (1) (a); *accord Martinez*, 325 Ga. App. at 273 (2).

[9] *In the Interest of L. T.*, 325 Ga. App. at 592 (citation & punctuation omitted); *accord Ga. Transmission Corp. v. Worley*, 312 Ga. App. 855, 856 (720 SE2d 305) (2011); *Singletary*, 310 Ga. App. at 572.

[10] *Chase v. State*, 285 Ga. 693, 695 (681 SE2d 116) (2009); *see Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)); *Martinez*, 325 Ga. App. at 273 (2) (same).

modified so that the amount of such default judgment shall be reduced to an amount equal to $50.00 plus 100 percent of the amount by which the garnishee was indebted to the defendant[.][11]

Put another way, Georgia law provides a defaulting garnishee with an opportunity to reduce the amount of its default within a specified 90-day time period, which begins tolling on the date the garnishee is *served* with the default judgment. But here, Prospira filed its motion to modify the default judgment under OCGA § 18-4-24 (a) more than 90 days after being served with the default judgment (*i.e.*, 107 days). As a result, it was not filed within the window of opportunity provided for by the statute.[12] End of story.

Or is it? Prospira concedes OCGA § 18-4-24 (a) explicitly provides that the 90-day grace period for filing a motion to modify a default judgment begins on "the date the garnishee was served with such default judgment." Even so, Prospira maintains this statutory language must be construed together with OCGA § 9-11-4 (the Civil Practice Act statute concerning "process"). And to be sure, OCGA § 18-4-24 (a) does

---

[11] (Emphasis supplied).

[12] *Id.*; *see also* OCGA § 18-4-24 (b) ("On the trial of a motion to modify a default judgment, the burden of proof shall be upon any plaintiff who objects to the timeliness of the motion to establish that such motion was not filed *within the time provided for by this Code Section*." (emphasis supplied)).

7

provide that OCGA § 9-11-4 governs the manner of *serving* default judgments on garnishees. But Prospira's argument does not rest on any of the *service* provisions contained in OCGA § 9-11-4. Instead, Prospira points to OCGA § 9-11-4 (h), which concerns the "return" of service under the Civil Practice Act: "If the proof of service is not filed within five business days, the time for the party served to answer the process shall not begin to run until such proof of service is filed." And this matters, according to Prospira, because the tolling period in OCGA § 9-11-4 (h) applies instead of the tolling provision contained in OCGA § 18-4-24 (a), and it filed a motion to modify the default judgment within 90 days of Kemron filing its proof of service for the default judgment with the trial court. We find this argument unavailing for several reasons.

To begin with, OCGA § 18-4-24 (a) unequivocally provides the 90-day period for filing a motion to modify a default judgment runs from the time a garnishee is *served*. Prospira attempts to circumvent this clear statutory directive and supplant the tolling provision contained in OCGA § 18-4-24 (a) with the tolling period provided for in OCGA § 9-11-4 (h), which says that "the time for the party served to *answer the process* shall not begin to run until such proof of service is filed" with "*the court*

8

in the county in which the action is pending."[13] But there is no textual basis for such an argument. At best, and construing Prospira's *in pari materia*[14] interpretation of OCGA § 18-4-24 (a) and OCGA § 9-11-4 (h) as generously as possible, these two statutes are *arguably* in conflict; and the garnishment statute (OCGA § 18-4-24 (a)), as the more specific statute, controls over OCGA § 9-11-4 (h).[15]

---

[13] (Emphasis supplied).

[14] *See Goldberg v. State*, 282 Ga. 542, 546 (651 SE2d 667) (2007) ("A statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes 'in pari materia,' are construed together, and harmonized wherever possible . . . ." (punctuation omitted)).

[15] *See CL SNF, LLC v. Fountain*, __ Ga. __, __ (863 SE2d 116, 121) (Ga. Sept. 21, 2021) (providing that when "two statutes are in conflict, . . . the more specific statute governs over the more general one" (punctuation omitted)); *Glinton v. And R, Inc.*, 271 Ga. 864, 867 (524 SE2d 481) (1999) ("[S]pecific statutes govern over more general statutes[.]"); *Ga. Mental Health Inst. v. Brady*, 263 Ga. 591, 592 (436 SE2d 219) (1993) ("[A] specific statute governs over a more general statute where they are in conflict."); *Bellsouth Telecomm., LLC v. Cobb Cty.*, 305 Ga. 144, 151 (1) (824 SE2d 233) (2019) (providing that when "two statutes are in conflict, . . . the more specific statute governs over the more general one"); ANTONIN SCALIA & BRYAN A. GARNER, Reading Law: The Interpretation of Legal Texts § 28 (1st ed. 2012) ("The general/specific canon . . . deals with what to do when conflicting provisions simply cannot be reconciled—when the attribution of no permissible meaning can eliminate the conflict. Which provision must yield? Or must they both be disregarded? . . . . [T]he specific provision comes closer to addressing the very problem posed by the case at hand and is thus more deserving of credence."); *see also* OCGA § 9-11-81 ("This chapter shall apply to all special statutory proceedings except to the extent that specific rules of practice and procedure in conflict herewith are expressly prescribed by law[.]").

9

But in our view, OCGA § 9-11-4 (h) has no bearing at all on the meaning of OCGA § 18-4-24 (a). OCGA § 18-4-24 (a) only incorporates OCGA § 9-11-4 as to the manner in which "the plaintiff shall *serve* the garnishee," and OCGA § 9-11-4 (h) has nothing to do with how a garnishee is to be served with a default judgment. To the contrary, OCGA § 9-11-4 (h) concerns the "return" of service once it has already been made—*i.e.*, making "*proof of such service* with the court in the county in which the action is pending within five business days of the service date."

Prospira's reliance on OCGA § 9-11-4 (h) is also problematic because while that statute does toll the time "to answer the process," there is no "process" to "answer" in a default judgment proceeding—the time to *answer* having already expired.[16] Indeed, the relevant document to be served here was not *process* (*i.e.*, a summons[17]) but a default judgment. And again, by the clear terms of OCGA § 18-4-

---

[16] *See* OCGA § 18-4-21 ("Except as provided in Code Section 18-4-22, when a garnishee fails or refuses to file a garnishee answer by the forty-fifth day after service of the summons of garnishment, such garnishee shall automatically be in default."); *see also* OCGA § 9-11-55 (a) ("If in any case an answer has not been filed within the time required by this chapter, the case shall automatically become in default unless the time for filing the answer has been extended as provided by law.").

[17] *See* OCGA § 9-11-4 (c) (providing for "Summons–By whom served" and explaining that "*[p]rocess* shall be served by . . . . " (emphasis supplied)); *Warren v. Fed. Land Bank of Columbia*, 157 Ga. 464, (122 SE 40) (1924) ("[P]rocess is jurisdictional, and failure to attach process is fatal to any action."); *see also McIntosh v. Covenant House*, 248

10

24 (a), Kemron properly served the default judgment using one of the mechanisms set forth in OCGA § 9-11-4.[18] Needless to say, Prospira is not asking this Court to accept its "answer [to] process,"[19] but rather its "motion under [OCGA] § 18-4-24 (a) to modify the default judgment." As a result, the tolling period for the 90-day period to file a motion to modify a default judgment under OCGA § 18-4-24 (a) began on the date Prospira was served with the default judgment.[20]

---

FRD 160, 161 (S.D.N.Y. 2008) ("Jurisdiction attaches upon the service of a summons as well as a pleading. In fact, Federal Rule [of Civil Procedure] 4 [(c) (1)], which governs service of process, is entitled, 'Summons,' and it clearly states, 'The plaintiff is responsible for service of a summons and complaint.'"). *See generally* § 9-11-4. Process (text of Code section), 2 Ga. Pleading, Practice and Legal Forms § 9-11-4, Commentary (4th ed.) ("Under the [Civil Practice Act], process is a summons requiring defendant to appear and file appropriate defensive pleadings with the clerk and notice that his failure to do so will result in judgment by default."); *Process*, THE OXFORD ENGLISH DICTIONARY, (5) (Law) (b) (3rd ed. 2007) (modified online Sept. 2021) (defining *process* in the legal sense as "[t]he formal commencement of any legal action; the mandate, summons, or writ by which a person or thing is brought into court for litigation"); *Process*, BLACK'S LAW DICTIONARY 1325 (9th ed. 2009) (defining *process* as "[a] summons … to appear or respond in court").

[18] *See* OCGA § 9-11-4 (h) (noting that "[f]ailure to make proof of service shall not affect the validity of the service").

[19] OCGA § 9-11-4 (h).

[20] We are also unconvinced by Prospira's assertion that Uniform Superior Court Rule 15 supports its argument that OCGA § 9-11-4 (h) tolls the 90-day period in OCGA § 18-4-24 (a). That rule requires the party seeking a default judgment to certify "the date on which proof of service" was filed for that judgment. This certification is "intended to assure the

11

Accordingly, for all these reasons, we reverse the trial court's judgment because Prospira's motion to modify default was filed more than 90 days after it was served with the default judgment.[21]

*Judgment reversed. Mercier and Pinson, JJ., concur.*

---

judge who has received a proposed default judgment that the defendant was in fact served and in fact failed to answer, information already available in the record." *Williams v. Contemp. Servs. Corp.*, 325 Ga. App. 299, 301 (1) (750 SE2d 460) (2013); *see also Smith v. Sanders*, 360 Ga. App. 286, 290 (2) (861 SE2d 123) (2021) ("We have held that, based on the apparent purpose of Rule 15 and the fact that the same information required in the Rule 15 certificate can be found in the record, the failure to file a Rule 15 certificate is not a nonamendable defect in the record. Here, the date and type of service effected on [the defendant] and the fact that no timely defensive pleading had been filed were apparent from the record. Thus, [the plaintiff's] failure to comply with USCR 15 was an amendable defect." (footnotes & punctuation omitted)). The USCR Rule 15 Certificate, then, has no relevance to the tolling of the 90-day motion to modify deadline.

[21] *See Bryde v. City of Atlanta*, 350 Ga. App. 129, 131 (1) (828 SE2d 122) (2019) ("We therefore find that Rule 4 (h) conflicts with the special statutory provision found in OCGA § 32-3-14 and thus does not apply in condemnation proceedings such as the one at hand."); OCGA § 9-11-81 ("This chapter shall apply to all special statutory proceedings except to the extent that specific rules of practice and procedure in conflict herewith are expressly prescribed by law . . . .").