**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 13, 2026**

# In the Court of Appeals of Georgia

A25A2187. GOMEZ et al v. USAA CASUALTY INSURANCE COMPANY.

DILLARD, Presiding Judge.

This is yet another case in the ongoing saga of settlement agreements in the motor-vehicle, personal-injury context here in Georgia. The story is a familiar one by now. There is a car accident. Someone is tragically injured. The party who caused the injury has minimal insurance policy limits. The attorney representing the injured party makes a settlement offer to the defendant's insurer. In making that offer, the plaintiff's attorney includes onerous, byzantine terms in the hope of causing a botched acceptance. And this then opens the door for the injured party to bring a bad-faith claim against the insurer, which allows for the possibility of a far larger verdict for the plaintiff. Enter the General Assembly. In 2013, it passed OCGA § 9-11-67.1—which

was revised in 2021 and 2024—to address this very issue. This case concerns the plain meaning of the 2021 version of the statute.

Here, Emely Gomez and Katina Logan Mitchell appeal from the trial court's order to enforce a settlement agreement after it granted judgment on the pleadings in favor of USAA Casualty Insurance Company.[1] In doing so, Gomez argues the court erred by (1) applying OCGA § 9-11-67.1 (2021) to this case, (2) misreading OCGA § 9-11-67.1 (2021) to override foundational contract principles and concluding that a contract existed when there was a lack of mutual assent as to its terms, and (3) ordering equitable remedies. For the following reasons, we affirm.[2]

---

[1] Emely Gomez brought this suit as next friend of Zeena Alaia Logan, and Katina Logan Mitchell is the administrator of the estate of DeAndre Anthony Logan. For the sake of clarity, the appellants will be referred to collectively as "Gomez" and USAA Casualty Insurance Company will be referred to as "USAA."

[2] Oral argument was held on October 7, 2025, and is archived on the Court of Appeals of the State of Georgia's website. See Court of Appeals of the State of Georgia, Oral Argument, Case No. A25A2187 (Oct. 7, 2025), available at https://vimeo.com/1127167917.

Viewed *de novo* in the light most favorable to Gomez,[3] the record shows that Ashley (Thomas) Perry was insured by USAA with a liability coverage limit of $50,000 per person. On December 16, 2021, Perry was in a motor-vehicle accident that tragically resulted in the death of DeAndre Anthony Logan.[4] After that, on September 26, 2023, Gomez sent a demand to USAA for Perry's $50,000 per-person policy limit.

Gomez's demand letter[5] claimed OCGA § 9-11-67.1 was inapplicable. More precisely, the letter advised in a footnote: "Please be aware that, although this letter is consistent with OCGA § 9-11-67.1 (2013), that statute was repealed on July 1, 2021,

---

[3] See, e.g., *Lester v. Hampton*, 377 Ga. App. 353, 353 (922 SE2d 595) (2025) ("When reviewing a trial court's order on a motion to enforce a settlement agreement, we apply a de novo standard of review and view the evidence in a light most favorable to the nonmoving party.").

[4] Zeena Alaia Logan is DeAndre's minor daughter.

[5] This correspondence emphasized it was an "offer of compromise" and noted that referring to the offer as a "demand letter" in any communication would be considered a rejection of the "offer of compromise." But a demand letter by any other name is still a demand letter (or offer to settle). See *White v. Cheek*, 360 Ga. App. 557, 560 (859 SE2d 104) (2021) (considering a letter containing an "offer of compromise" to be a demand letter). See also *Diaz v. Thweatt*, 373 Ga. App. 586, 590 (908 SE2d 22) (2024) (considering an "offer to compromise" and "offer to settle" as one in the same).

and there is no requirement to comply with OCGA § 9-11-67.1 (2013) or OCGA § 9-11-67.1 (2021) at this time." It further demanded that—to accept the offer—USAA needed to include the following language in its written response: "USAA agrees that any inconsistencies between [Gomez's] offer and OCGA § 9-11-67.1 do not invalidate [the] offer and that the terms, conditions, and acts required by [Gomez] are controlled by [Gomez] and not by OCGA § 9-11-67.1." And in a footnote to this language, Gomez explained that this requirement was included to ensure

> USAA does not attempt to prevent a resolution of this matter, justify a rejection of this [o]ffer, or later attempt to rescind a binding resolution of this matter by claiming there is some technicality about OCGA § 9-11-67.1 that somehow makes it applicable to this [o]ffer, prevents contract formation, justifies a rejection of this [o]ffer, and/or allows for contract rescission.

Despite insisting OCGA § 9-11-67.1 did not apply to the "offer of compromise," the demand letter repeatedly referenced the statute under a division titled "Governing Law, Definitions, Requirements, Limitations, and Qualifications," explaining that the offer

> identifies the specific requirements of [the statute] in order to show the requirements of this [o]ffer are consistent with OCGA § 9-11-67.1 (2013)

4

and/or OCGA § 9-11-67.1 (2021) and to show that this [o]ffer gives USAA a reasonable opportunity to protect its insured by accepting the specific terms and conditions of this [o]ffer in their entirety.

The letter also explained it was sent in a manner consistent with, referenced terms identified in, and included sufficient records for evaluation under portions of OCGA § 9-11-67.1 (2021). It then specified actions that would not be considered counteroffers, consistent with OCGA § 9-11-67.1. But once again, the correspondence emphasized that it was an offer "made pursuant to and governed by common law and provides an opportunity for contract formation as identified in OCGA § 9-11-67.1(c)."[6] Finally, the letter provided that anything rejecting the offer was "governed by this [o]ffer, and nothing in this [o]ffer extends the application of OCGA § 9-11-67.1 (2021) beyond the scope of OCGA § 9-11-1 to create obligations not required by

---

[6] The demand letter also provided that

OCGA § 9-11-67.1(c) and OCGA § 9-11-67.1(b)(1) (2021) allow for an offer and acceptance of an offer to be made in a manner at variance with other provisions of OCGA § 9-11-67.1 and with terms and conditions in addition to and/or at variance with other provisions of OCGA § 9-11-67.1, including, but not limited to, those provisions defined in OCGA § 9-11-67.1(a).

Georgia law." Among the terms that went beyond those required by OCGA § 9-11-67.1 were things like barring any variance to the settlement offer, such as an "extra or missing comma or period or misspelling, even if accidental," which Gomez would consider a rejection of the offer.

On November 1, 2023, USAA accepted "the material terms of the settlement offer," and did so "in accordance with the requirements of OCGA § 9-11-67.1(a) and (b)(2)." USAA also agreed to pay the $50,000 per-person policy limit. Lastly, USAA maintained that—contrary to Gomez's assertions—because Gomez made a pre-answer offer to settle, the offer was "governed by OCGA § 9-11-67.1," and USAA did not agree to the inclusion of any terms *other than* those provided under OCGA § 9-11-67.1(a), which constituted the "material terms" of an agreement.[7]

After that, Gomez's counsel ostensibly "withdrew" the offer because USAA's response did not accept all of the demand letter's terms. Even so, USAA maintained

---

[7] OCGA § 9-11-67.1(a) (2021) provided that offers made under the Code section were required to contain the following "material terms": . . . [t]he time period within which such offer must be accepted, which shall be not less than 30 days from receipt of the offer; . . . [a]mount of monetary payment; . . . [t]he party or parties the claimant or claimants will release if such offer is accepted; . . . [f]or any type of release, whether the release is full or limited and an itemization of what the claimant or claimants will provide to each releasee; and . . . [t]he claims to be released." OCGA § 9-11-67.1(a)(A)-(E) (2021).

a settlement was reached by it accepting the material terms under OCGA § 9-11-67.1(a) (2021), which were applicable and controlling. As a result, USAA forwarded a settlement check for $50,000 after Gomez refused to provide wire-transfer instructions. But Gomez continued to claim that no agreement was reached, leading USAA to file suit on April 16, 2024, seeking both damages and equitable relief. In the answer to USAA's complaint, Gomez noted the offer "specifically stated that it was *not* made pursuant to OCGA § 9-11-67.1," and so it was not controlled by that statute because it did not apply.

USAA proceeded to file a motion for judgment on the pleadings under OCGA § 9-11-12(c), asserting that because it accepted the "statutorily imposed material terms" of OCGA § 9-11-67.1, the parties reached a binding agreement as to those terms. And after a hearing, the trial court granted that motion on May 7, 2025. In doing so, the court concluded that OCGA § 9-11-67.1 (2021) applied to the case, so only the terms of subsection (a) could be included in Gomez's offer to settle. And because USAA provided written acceptance of those terms, the court found a settlement agreement was formed. After ordering the parties to provide more information (and denying a motion by Gomez to permit the filing of amended

pleadings), the court issued a final order for specific performance of the binding settlement agreement. This appeal follows.

1. Gomez first argues the trial court erred by finding that OCGA § 9-11-67.1 (2021) applies here when the demand letter was sent before a lawsuit was filed. We disagree.

In interpreting OCGA § 9-11-67.1 (2021), our analysis begins with "familiar and binding canons of construction."[8] And in considering a statute's meaning, our charge is to "presume that the General Assembly meant what it said and said what it meant."[9] We must afford the statutory text, then, its plain and ordinary meaning,[10]

---

[8] *Holcomb v. Long*, 329 Ga. App. 515, 517(1) (765 SE2d 687) (2014).

[9] *Deal v. Coleman*, 294 Ga. 170, 172(1)(a) (751 SE2d 337) (2013) (citation and punctuation omitted). Accord *Arby's Restaurant Grp., Inc. v. McRae*, 292 Ga. 243, 245(1) (734 SE2d 55) (2012); *Martinez v. State*, 325 Ga. App. 267, 273(2) (750 SE2d 504) (2013).

[10] *Deal*, 294 Ga. at 172(1)(a). See *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies)[.]"); *Singletary v. State*, 310 Ga. App. 570, 572 (713 SE2d 698) (2011) ("In construing these statutes, we apply the fundamental rules of statutory construction that require us to construe the statutes according to their terms, [and] to give words their plain and ordinary meaning[.]" (citation and punctuation omitted)).

consider the text contextually,[11] read the text "in its most natural and reasonable way, as an ordinary speaker of the English language would,"[12] and seek to "avoid a construction that makes some language mere surplusage."[13] So, when the language of a statute is plain and susceptible of only one natural and reasonable construction,

---

[11] See *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 10(II)(B) (133 SCt 2247, 186 LE2d 239) (2013) (Scalia, J.) ("Words that can have more than one meaning are given content, however, by their surroundings." (citation and punctuation omitted)); *Deal*, 294 Ga. at 172(1)(a) ("[W]e must view the statutory text in the context in which it appears[.]"); *Hendry v. Hendry*, 292 Ga. 1, 3(1) (734 SE2d 46) (2012) (same); *In the Interest of L. T.*, 325 Ga. App. 590, 592 (754 SE2d 380) (2014) (same); *Martinez*, 325 Ga. App. at 273(2) (same). See also OCGA § 1-3-1(b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words ... ."); *Scherr v. Marriott Int'l, Inc.*, 703 F3d 1069, 1077 (II) (C) (2) (7th Cir. 2013) (Manion, J.) ("In statutory construction cases, we begin with the language of the statute itself and the specific context in which that language is used." (citation and punctuation omitted)).

[12] *Deal*, 294 Ga. at 172–73(1)(a). Accord *Luangkhot v. State*, 292 Ga. 423, 424(1) (736 SE2d 397) (2013), *superseded by statute on other grounds as recognized by Estrada-Nava v. State*, 332 Ga. App. 133 (771 SE2d 28) (2015); *Martinez*, 325 Ga. App. at 273(2).

[13] *In the Interest of L. T.*, 325 Ga. App. at 592 (citation and punctuation omitted). Accord *Ga. Transmission Corp. v. Worley*, 312 Ga. App. 855, 856 (720 SE2d 305) (2011); *Singletary*, 310 Ga. App. at 572.

"courts must construe the statute accordingly."[14] With these guiding principles in mind, we turn to the statute at issue—OCGA § 9-11-67.1 (2021).[15]

---

[14] *Luangkhot*, 292 Ga. at 424(1) (punctuation omitted). See *Deal*, 294 Ga. at 173(1)(a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)); *Martinez*, 325 Ga. App. at 273(2) (same).

[15] While the 2021 version of the statute specified that it applied "to causes of action for personal injury, bodily injury, and death arising from the use of a motor vehicle on or after July 1, 2021[,]" see OCGA § 9-11-67.1(h) (2021), the current version includes no such in-text application. But the amending Act provided, in relevant part, that the current version would "apply to *any offers* to settle a tort claim for personal injury, bodily injury, or death arising from a motor vehicle collision *made on or after the date this Act is approved* by the Governor or upon its becoming law without such approval." Laws 2024, Act 415, § 2 (emphasis supplied). The Act was approved on April 22, 2024. See *id*. And while we have identified April 22, 2024, as the effective date of the current version of OCGA § 9-11-67.1, see *Diaz*, 373 Ga. App. at 589 n.1 (asserting that the current version of the statute became effective on April 22, 2024); *Redfearn v. Moore*, 371 Ga. App. 655, 657(1) n.3 (902 SE2d 233) (2024) (same), this is mistaken. The current version of OCGA § 9-11-67.1 became effective July 1, 2024. See OCGA § 1-3-4(a)(1) (*"Unless a different effective date is specified* in an Act . . . [a]ny Act which is approved* by the Governor or which becomes law without his approval on or after the first day of January and prior to the first day of July of a calendar year *shall become effective on the first day of July[.]*" (emphasis supplied)). There is, then, a conflict between the law's purported date of *application* and its *effective* date. See also Op. Att'y Gen. 76-76 (July 16, 1976) (opining that Act's purported effective date of July 1, 1975, but which was not enacted until February 1976—and thus not legally effective until July 1, 1976—was "meaningless and void" and should be replaced with the actual effective date), *available at* https://dlg.galileo.usg.edu/data/dlg/ggpd/pdfs/dlg_ggpd_y-ga-bl310-b-ps1-bo6-b 1976.pdf. Even so, we leave for another day any resolution of the tension between the effective date and current version of the statute's purported date of application. In this

---

OCGA § 9-11-67.1 (2021) applied to "*any* offer to settle a tort claim for personal injury, bodily injury, or death arising from the use of a motor vehicle and prepared by or with the assistance of an attorney on behalf of a claimant or claimants"[16] made "[p]rior to the filing of an answer."[17] And Gomez argues that because the *current* version of the statute was amended to apply to settlement offers made "[f]rom the time a cause of action accrues until the filing of an answer by the named defendant,"[18] the 2021 version did not apply to pre-suit offers to settle. Of note, the 2013 version of the statute applied to offers made "[p]rior to the filing of a civil action."[19]

In support of this argument, Gomez asserts that OCGA § 9-11-67.1 (2021)'s placement within the Civil Practice Act means the statute *must* have required a lawsuit to be filed before it applied to any offer to settle. But we rejected this same argument

---

case, it is undisputed the 2021 version of the statute is implicated because the offer to settle was made in 2023.

[16] OCGA § 9-11-67.1 (a) (2021) (emphasis added).

[17] *Id.*

[18] OCGA § 9-11-67.1(b).

[19] OCGA § 9-11-67.1(a) (2013).

less than a year ago in *Square v. Woods*.[20] And while Gomez contends *Square* relied on pre-suit-offer cases in which the statute's application was not challenged on this basis,[21] she does not explicitly ask us to overturn *Square*. We decline to do so *sua sponte*.

Significantly, our Civil Practice Act does not limit its applicability to circumstances arising only after an action is filed.[22] Indeed, the original 2013 version

---

[20] See 375 Ga. App. 319, 323 (915 SE2d 915) (2025) (rejecting appellant's argument that OCGA § 9-11-67.1 (2021) did "not apply to pre-suit offers and cannot be used to create a contract here" and that the statute's "application is limited to the time after a complaint is filed" because it was "included in the Civil Practice Act"), *cert. denied* (Nov. 4, 2025).

[21] While not an issue here, we recently concluded *again* that a trial court erred in failing to enforce a settlement agreement in which the offer to settle under OCGA § 9-11-67.1 (2021) was made more than six months before the plaintiff filed suit. See *Bonilla v. Ventura*, A25A1635, 2026 WL 178720, at *1 (Ga. Ct. App. Jan. 22, 2026) (noting that motor-vehicle accident occurred in August 2023, offer to settle was made and accepted in January 2024, and suit was filed in February 2024).

[22] See OCGA § 9-11-1 (Scope of Chapter) ("This chapter governs the procedure in all courts of record of this state in all actions of a civil nature whether cognizable as cases at law or in equity, with the exceptions stated in Code Section 9-11-81. This chapter shall be construed to secure the just, speedy, and inexpensive determination of every action. This chapter shall also apply to courts which are not courts of record to the extent that no other rule governing a particular practice or procedure of such courts is prescribed by general or local law applicable to such courts.").

of the statute—which was also included in the Civil Practice Act—applied *only until an action was filed.*[23] And needless to say, this cuts against Gomez's argument—particularly when the 2021 version applies *until an answer* is filed (thus encompassing at least a portion of time *after* an action is filed). Moreover, the "clarity" provided by the 2024 version—*i.e.*, its explicit application from the time a cause of action "accrues" until an answer is filed—does not alter our interpretation of the 2021 version's plain language. Nor could it. As Justice Scalia aptly noted in *Bruesewitz v. Wyeth LLC*,[24] "[p]ost-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation."[25] Indeed, the text of OCGA § 9-11-67.1 (2021) made clear that it applied to "any offer" until an answer was filed—and thus applied at *any time before* that specific event. As a result, OCGA §

---

[23] See OCGA § 9-11-67.1(a) (2013) ("Prior to the filing of a civil action, any offer to settle a tort claim for personal injury, bodily injury, or death arising from the use of a motor vehicle and prepared by or with the assistance of an attorney on behalf of a claimant or claimants shall be in writing … .").

[24] 562 U.S. 223 (131 SCt 1068, 179 LE2d 1) (2011).

[25] *Id.* See also *District of Columbia v. Heller*, 554 U.S. 570, 605(II)(D) (128 SCt 2783, 171 LE2d 637) (2008); *United States v. Mine Workers*, 330 U.S. 258, 281–82(I) (67 SCt 677, 91 LEd 884 (1947); *Changji Esquel Textile Co. v. Raimondo*, 40 F4th 716, 724(III)(B) (D.C. Cir. 2022); *Pitch v. United States*, 953 F3d 1226, 1240–41(III) (11th Cir. 2020); *Penn. Med. Soc. v. Snider*, 29 F3d 886, 898(II)(B)(b) (3d Cir. 1994).

9-11-67.1 (2021) "applies to *all offers made*"[26] before an answer is filed—regardless of whether those offers were made before a lawsuit is filed.[27] The trial court did not err, then, in applying OCGA § 9-11-67.1 (2021) here.

2. In related enumerations of error, Gomez argues the trial court erred by misreading OCGA § 9-11-67.1 (2021) to override foundational contract principles and conclude that a settlement agreement existed when there was a lack of mutual assent as to its terms. Once again, we disagree.

---

[26] *Lester*, 377 Ga. App. at 353 (emphasis supplied).

[27] To the extent Gomez argues a party could *unilaterally* elect to operate outside the confines of OCGA § 9-11-67.1 (2021) by claiming an offer was *not* made under the statute (*i.e.*, by waiving the statute), this argument lacks merit for the same reason. See *id.* at 353 (922 SE2d at 587) ("[Appellee] suggested that OCGA § 9-11-67.1 is inapplicable because [Appellant's] offer referred to OCGA § 51-12-14, not OCGA § 9-11-67.1. But [Appellant's] failure to refer to OCGA § 9-11-67.1 does not mean that OCGA § 9-11-67.1 does not apply. OCGA § 9-11-67.1 applies to all offers made prior to the filing of an answer to settle claims for personal injury arising from the use of a motor vehicle, prepared by or with the assistance of an attorney on behalf of a claimant."). Of course, as explained below, parties are free to operate under terms different from those required by OCGA § 9-11-67.1 (2021)—but only by *mutually agreeing* to do so. See *infra* notes 41-48 & accompanying text.

At the outset, it is useful to revisit some of OCGA § 9-11-67.1's history. As explained by Presiding Judge McFadden's special concurrence in *White v. Cheek*,[28] OCGA § 9-11-67.1 (2013) was enacted in response to the Supreme Court of Georgia's holding in *Southern Gen. Ins. Co. v. Holt*.[29] Under *Holt*, an insurer that "passes up an opportunity to settle a claim within policy limits can be liable to its insured for a bad faith claim," thereby creating "an incentive, in cases where damages greatly exceed policy limits, for a plaintiff to attempt to set up a bad faith claim."[30] And such scenarios "can be a trap for the unwary,"[31] which has resulted in us cautioning

---

[28] 360 Ga. App. 557 (859 SE2d 104) (2021). Because *White* was decided after August 1, 2020, it is fully precedential despite Presiding Judge McFadden's special concurrence (Senior Judge Phipps fully concurred in Judge Rickman's majority opinion). See Ct. App. R. 33.2(a)(2) ("Prior to August 1, 2020: If an appeal was decided by a division of this Court, a published opinion in which all three panel judges fully concur is binding precedent. An opinion is physical precedent only (citable as persuasive, but not binding, authority), however, with respect to any portion of the published opinion in which any of the panel judges concur in the judgment only, concur specially without a statement of agreement with all that is said in the majority opinion, or dissent.").

[29] 262 Ga. 267 (416 SE2d 274) (1992).

[30] *White*, 360 Ga. App. at 564 (McFadden, J., concurring specially).

[31] *Wright v. Spearman*, 376 Ga. App. 121, 124 (918 SE2d 188) (2025), *cert. denied* (Jan. 5, 2026).

"parties to avoid crossing the line from vigorous advocacy to gamesmanship."[32] We are mindful, then, that OCGA § 9-11-67.1 was enacted in the context of this legal environment.[33]

In *Grange Mutual Casualty Company v. Woodard*,[34] the Supreme Court of Georgia answered a certified question from the Eleventh Circuit to interpret the 2013 version of OCGA § 9-11-67.1.[35] In doing so, the *Woodward* Court held that the plain language of this earliest version of the statute did "not expressly or by necessary implication contravene [the] common law principle[ ]" that "[t]here is no enforceable settlement between parties absent mutual agreement between them."[36] So, our Supreme Court rejected the argument made by USAA here (and adopted by the trial court)—that acceptance of the five material terms delineated in OCGA § 9-11-67.1(a)

---

[32] *Id.*

[33] See *Grange Mut. Cas. Co. v. Woodard*, 300 Ga. 848, 856–57(2)(b) (797 SE2d 814) (2017) (explaining that "[i]n understanding the work that OCGA § 9-11-67.1 performs, it is helpful to recall the legal environment in which it was enacted," which encompassed the Supreme Court's *Holt* "decision on an insurer's duty to its insured when faced with a settlement demand," thus "spawn[ing] much litigation").

[34] 300 Ga. 848 (797 SE2d 814) (2017).

[35] *Id.*

[36] *Id.* at 852–54(2)(a)-(b).

resulted in a binding agreement even if the offer included extraneous terms that are rejected.[37] Indeed, the *Woodward* Court concluded that OCGA § 9-11-67.1 (2013) did not contravene the common law even "by necessary implication."[38]

In the wake of *Woodard*, OCGA § 9-11-67.1 was amended by the General Assembly in 2021 to provide, in relevant part, that "[u]nless otherwise agreed by both the offeror and the recipients in writing, the terms outlined in subsection (a) . . . *shall be the only terms which can be included* in an offer to settle made under this Code section."[39] Moreover, the 2021 version of the statute added a manner of acceptance as follows: "The recipients of an offer to settle made under this Code section may

---

[37] See *id.* at 855(2)(b) ("Given the mandatory language of subsection (a) specifying terms that 'shall' be included in a Pre-Suit Offer, the most natural reading of this provision is that the statute does not preclude a Pre-Suit Offer from requiring acceptance of terms in addition to those set forth in subsection (a).").

[38] *Id.* at 856(2)(b). See *White*, 360 Ga. App. at 562–63 ("[O]ur Supreme Court has concluded that 'the plain language of OCGA § 9-11-67.1 [(2013)] does not expressly or by necessary implication contravene ... common law principles' [of contract formation].").

[39] OCGA § 9-11-67.1(b)(1) (2021) (emphasis added). See Laws 2021, Act 203, § 1 (amending statute to add (b)(1)). The successor to this provision, as amended in 2024, now precedes the list of statutory "material terms" (formerly codified within subsection (a)), and the statute says that these "shall be the only material terms." See OCGA § 9-11-67.1(b)(1).

accept the same by providing *written acceptance of the material terms outlined in subsection (a)* of this Code section in their entirety."[40] Those are the provisions USAA relied on in asserting that its acceptance of the included statutory terms alone resulted in a binding settlement agreement.

Even so, Gomez maintains that OCGA § 9-11-67.1 (2021) required a meeting of the minds, and she is correct—but only to a point. Parties were, of course, free under OCGA § 9-11-67.1 (2021) to add other non-statutory, material terms to a settlement agreement. But adding such terms must be "otherwise agreed by both the offeror and the recipients in writing,"[41] and those terms must be "otherwise agreeable to both the offeror and recipient of the offer."[42] In other words, common-law principles continued to operate when parties wished to add terms to an offer that otherwise fell under OCGA § 9-11-67.1 (2021) but *only if all parties agreed* to add or

---

[40] OCGA § 9-11-67.1(b)(2) (2021) (emphasis added). See Laws 2021, Act 203, § 1 (amending statute to add (b)(2)). This provision is now codified as current OCGA § 9-11-67.1(d).

[41] OCGA § 9-11-67.1(b)(2) (2021).

[42] OCGA § 9-11-67.1(c).

operate under those extra-statutory terms. That is precisely what occurred in *Redfearn v. Moore*,[43] on which Gomez heavily relies.

In *Redfearn* (in which we construed the 2021 version of the statute), the insurer responded to the plaintiff's demand letter and accepted the terms of the offer *without exception*.[44] The insurer also agreed that "any inconsistencies between Plaintiffs' Offer and OCGA § 9-11-67.1 do not invalidate Plaintiffs' Offer and the terms, conditions and acts required by Plaintiffs' Offer are controlled by Plaintiffs' Offer and not by

---

[43] 371 Ga. App. 655 (902 SE2d 233) (2024).

[44] See *id.* at 656 (explaining that insurer "wrote a letter to Plaintiffs' counsel indicating that it was accepting Plaintiffs' demand"). To the extent *Redfearn* heavily relies on our decision in *Pierce v. Banks*, 368 Ga. App. 496 (890 SE2d 402) (2023), we note that *Pierce* construed the 2013 version of OCGA § 9-11-67.1—not the 2021 version at issue in *Redfearn* and this appeal. Of course, the 2013 version of the statute differed in material respects from the 2021 version. And as we have explained, when we are "faced with a post-decision statutory amendment, the justifications for 'super stare decisis' not only fail, they actually compel a court's re-evaluation of the statute out of deference to the Legislature's supremacy on statutory issues." *DeKalb County Bd. of Tax Assessors v. Barrett*, 361 Ga. App. 598, 605–06 (865 SE2d 192) (2021) (punctuation omitted). As a result, when an earlier version of a statute is "markedly different from that used in the current version of that statute, we are not bound to follow our prior precedent … because the General Assembly has effectively abrogated it." *Id.* (footnote omitted). So, *Redfearn*'s reliance on *Pierce* cannot mean that decision controls the interpretation of materially different provisions within the 2021 version of OCGA § 9-11-67.1. It is, to put it plainly, of no precedential utility here.

OCGA § 9-11-67.1.”[45] But by including an additional condition or restriction on the settlement check, the insurer failed to perform an act that was necessary for acceptance, and so there was no meeting of the minds.[46] In short, by agreeing in writing to terms that fell outside of OCGA § 9-11-67.1's enumerated material terms, the insurer in *Redfearn chose* to operate within the realm of common law. But to the extent *Redfearn* could possibly be read to hold that the 2021 version of OCGA § 9-11-67.1 "does not change the general law regarding contract formation and settlement formation specifically,"[47] that holding applies *only* to the circumstances as they existed in that case—*i.e.*, when parties mutually agree in writing to terms falling outside of OCGA § 9-11-67.1 (2021).[48] Beyond that, it has no precedential utility.

---

[45] *Redfearn*, 371 Ga. App. at 656 (quotation marks and brackets omitted).

[46] *Id.* at 659 (2).

[47] *Id.*

[48] See *Bonilla*, 2026 WL 178720, at *3 (noting that although the insurer "could have accepted Plaintiffs' offer under the statutory terms, it agreed to the terms 'as presented,'" so "like in *Redfearn*, we must conclude that [the insurer], on behalf of Bonilla, agreed to be bound by this term as a condition of acceptance"). See also *Schoicket v. State*, 312 Ga. 825, 832(1) (865 SE2d 170) (2021) (noting that "a decision's holding is limited to the factual context of the case being decided and the issues that context necessarily raises. Language that sounds like a holding—but actually exceeds the scope of the case's factual context—is not a holding no matter how much it sounds like one").

Here, we are faced with a different set of facts.[49] USAA agreed in writing *only* to the statutory material terms of Gomez's offer and rejected any non-statutory terms. And as we recently explained, a recipient can accept an offer "under the statutory terms"[50] *or* it can agree to be bound by more terms.[51] If the offeror and recipient both agree in writing to operate under *additional* terms, common-law principles still apply

---

[49] Gomez also relies on an unpublished opinion in *Spencer v. Lamb*, A24A1334 (Mar. 14, 2025), in claiming *Redfearn*'s holding applies here. But setting aside that unpublished opinions are not precedential, see Ct. App. R. 33.2(b) ("A decision that is not officially reported is neither physical nor binding precedent … ."), the facts in *Spencer* are, as in *Redfearn*, distinguishable from those here. In *Spencer*, the insurer gave an "unequivocal acceptance" to the terms of the offer "without variance of any sort." A24A1334 at 4. But again, our unpublished opinions are not binding and have no precedential value. See *Gibson v. State*, 319 Ga. App. 627, 630 (737 SE2d 728) (2013) (noting that although unpublished opinions are "of no precedential value," we may "consider the reasoning of … unpublished decisions persuasive …").

[50] *Bonilla*, 2026 WL 178720, at *3. See *Gabrell v. Hancock*, A25A2158, 2026 WL 249756, at *5 (Ga. Ct. App. Jan. 30, 2026) (explaining that "in providing its written acceptance in accordance with OCGA § 9-11-67.1(b)(1) [(2021)], [the insurer] confirmed there were no other terms between the parties, its disclosure was sufficient, and it did all it was required to do to accept the offer of settlement and create a binding settlement agreement").

[51] See *Bonilla*, 2026 WL 178720, at *3 (noting that while the insurer "could have accepted Plaintiffs' offer under the statutory terms, it agreed to the terms 'as presented'").

21

(as discussed in *Redfearn*).[52] But in the absence of such a *mutual* agreement, extraneous terms are irrelevant to the formation of a binding contract under OCGA § 9-11-67.1 (2021).[53]

As a result, a binding settlement agreement was formed under the plain language of OCGA § 9-11-67.1(b)(1) and (b)(2) (2021) when USAA accepted the material statutory terms of the offer in writing. The trial court did not err, then, in concluding that an agreement was reached as to those terms and those terms alone.

---

[52] See *id.* (applying common-law principles when insurer agreed to be bound by offer's terms "as presented" and offer included terms that fell outside of OCGA § 9-11-67.1 (2021)). See also OCGA § 9-11-67.1(c) ("Nothing in this Code section is intended to prohibit parties from reaching a settlement agreement in a manner and under terms otherwise agreeable to both the offeror and recipient of the offer.").

[53] See OCGA § 9-11-67.1(b)(1) ("Unless otherwise agreed by both the offeror and the recipients in writing, the terms outlined in subsection (a) of this Code section shall be the only terms which can be included in an offer to settle made under this Code section."); OCGA § 9-11-67.1(b)(2) ("The recipients of an offer to settle made under this Code section may accept the same by providing written acceptance of the material terms outlined in subsection (a) of this Code section in their entirety."). See also *Gabrell*, 2026 WL 249756, at *4 (explaining that appellant "offered to settle his claim under OCGA § 9-11-67.1 [(2021)], and the offer included the material terms set forth in the statute, along with the requirement that [the insurer] confirm that all coverage had been disclosed under subsection (a)(3)," and the insurer accepted the offer "by providing written acceptance of all material terms, specifically agreeing to OCGA § 9-11-67.1(b)(1), and providing [appellant] with the disclosure regarding all available insurance," notwithstanding the offer's inclusion of extra-statutory terms to which the insurer did *not* agree).

3. Finally, Gomez argues the trial court erred by ordering equitable remedies (*i.e.*, specific performance). Yet again, we disagree.

Gomez contends the trial court erred in granting specific performance when there was uncertainty as to any settlement agreement's terms "from the absence of mutual assent." But as explained in Division 2 *supra*, the terms of the settlement agreement encompassed the material statutory terms of OCGA § 9-11-67.1 (2021) that USAA accepted—which were the only terms that could be included in the offer because USAA did not agree to operate under any extra-statutory terms. This argument, then, lacks merit.[54]

---

[54] Although Gomez references the law regarding "unclean hands," she does not make any factual assertions to support a suggestion that USAA operated with "unclean hands." See, e.g., *Dixon v. MARTA*, 242 Ga. App. 262, 266(4) (529 SE2d 398) (2000) ("Rhetoric is not a substitute for cogent legal analysis, which is, at a minimum, a discussion of *the appropriate law as applied to the relevant facts*." (emphasis added )). So, we deem this portion of the enumerated error abandoned. See, e.g., *Estate of Tomlinson v. Houston Healthcare*, 372 Ga. App. 587, 601(3) (905 SE2d 664) (2024) (deeming claim of error abandoned when appellant's brief did not include "a discussion of 'the appropriate law as applied to the relevant facts'"). Similarly, Gomez has abandoned her assertion that the trial court erred in failing to "consider equitable factors" because she does not support this portion of the argument with citation to legal authority beyond, in the proceeding paragraph, reference to general specific-performance law. See, e.g., *In the Interest of of K. R.*, 367 Ga. App. 668, 677(2)(b) (888 SE2d 204) (2023) ("[W]e have held that an argument is abandoned if it provides general citations to the 'most basic legal authority' without providing any legal authority or argument related to the specific facts of [the] case."); *Brittain v.*

For all these reasons, we affirm the trial court's judgment for USAA.

*Judgment affirmed. Mercier, J., and Senior Judge C. Andrew Fuller, concur.*

---

*State*, 329 Ga. App. 689, 704(4)(a) (766 SE2d 106) (2014) ("[A]n appellant must support enumerations of error with argument and citation of authority, and mere conclusory statements are not the type of meaningful argument contemplated by our rules." (citation and punctuation omitted)); *Dixon*, 242 Ga. App. at 266(4) ("Rhetoric is not a substitute for cogent legal analysis, which is, at a minimum, a discussion of *the appropriate law as applied to the relevant facts*." (emphasis supplied)).